## EXHIBIT C

### INDEX OF ALL DOCUMENTS FILED IN STATE COURT ACTION

| EXHIBIT | DATE FILED | DOCUMENT TITLE |
|---|---|---|
| C-1 | | STATE COURT DOCKET SHEET |
| C-2 | 01/12/15 | PLAINTIFF'S ORIGINAL PETITION, DEMAND FOR JURY, AND DISCOVERY TO DEFENDANT, AND STIPULATION OF DAMAGES |
| C-3 | 02/13/15 | DEFENDANT AMERICAN WESTERN HOME INSURANCE COMPANY'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES |
| C-4 | 04/15/15 | LETTER TO PENNEBAKER LAW FIRM RETURNING DOCUMENTS ON AMERICAN WESTERN HOME INSURANCE COMPANY |
| C-5 | 04/28/15 | VACATION LETTER FILED BY ATTORNEYS |
| C-6 | 06/16/15 | MOTION FOR MEDIATION |
| C-7 | 06/16/16 | PROPOSED ORDER - MOTION FOR MEDIATION |
| C-8 | 07/08/15 | ORDER SETTING HEARING -MOTION FOR MEDIATION |
| C-9 | 08/24/15 | DEFENDANT'S TRADITIONAL MOTION FOR FINAL SUMMARY JUDGMENT |
| C-10 | 08/25/15 | DEFENDANT'S NOTICE OF WITHDRAWAL OF TRADITIONAL MOTION FOR FINAL SUMMARY JUDGMENT |

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search  Back                                    Location : County Courts   Images Help

# REGISTER OF ACTIONS
## CASE NO. CL-15-0095-F

| | | |
|---|---|---|
| Amanda Zamora D/B/A 3L Lots and Developers LLC / 3L Lucksinger Apartments VS. American Western Home Insurance Company | §<br>§<br>§<br>§<br>§ | Case Type: **Contract - Consumer/Commercial/Debt (OCA)**<br>Date Filed: **01/12/2015**<br>Location: **County Court at Law #6** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| Defendant | **American Western Home Insurance Company** | **EDDY DE LOS SANTOS**<br>*Retained*<br>713-650-9700(W) |
| Plaintiff | **Amanda Zamora D/B/A 3L Lots and Developers LLC / 3L Lucksinger Apartments** | **DOUGLAS E. PENNEBAKER**<br>*Retained*<br>210-562-2888(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 01/12/2015 | <u>Original Petition (OCA)</u><br>*Petition* |
| 01/12/2015 | <u>Citation Issued (Fee)</u><br>*AMERICAN WESTERN HOME INSURANCE COMPANY SENT OUT BY; CM 9269 3901 0661 5400 0047 1162 46 1/12/15* |
| 01/16/2015 | <u>Service Returned - Served</u><br>*AMERICAN WESTERN HOME INSURANCE COMPANY SERVED ON 1/15/2015 @ 9:46 A.M.* |
| 02/13/2015 | <u>Answer</u><br>*Defendant American Western Home Insurance Company's Original Answer and Affirmative Defenses* |
| 04/15/2015 | <u>Letter Received</u><br>*Letter to Pennebaker Law Firm returning documents on American Western Home Insurance Company* |
| 04/28/2015 | **Vacation Letter Filed by Attorneys**<br>*EMAILED COPY TO EVELIA 4/29/15* |
| 06/16/2015 | <u>Motion for Mediation, Filed</u><br>*Motion* |
| 06/16/2015 | <u>Order Filed</u><br>*Proposed Order* |
| 07/08/2015 | **Order Setting Hearing, Signed**<br>*motion for mediation set for 8/05/15 2 8:30 a.m. notice faxed to attys* |
| 07/08/2015 | <u>Order Setting Hearing, Signed</u><br>*MOTION TO MEDIATE* |
| 07/09/2015 | **Clerk's Entry**<br>*COPY OF OSH MOT TO MEDIATE SENT VIA EMAIL TO ATTY'S AND FAXED TO ATTY EDDY DE LO SANTOS CL-15-0095-F OSH MOTION TO MEDIATE July 9, 2015 3:12 PM From: San Juana Garcia "San Juana Garcia"; To: doug "doug"; mcallenlaw "mcallenlaw"; CL-15-0095-F ORDER SIGNED.pdf (161.2 KB) Download | Briefcase | Remove* |
| 08/05/2015 | **Motion for Mediation**  (8:30 AM) () |
| 08/24/2015 | <u>Motion</u><br>*Defendant's Traditional Motion for Summary Judgment* |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | **Defendant** American Western Home Insurance Company | | | |
| | Total Financial Assessment | | | 6.00 |
| | Total Payments and Credits | | | 6.00 |
| | **Balance Due as of 08/24/2015** | | | **0.00** |
| 02/13/2015 | Transaction Assessment | | | 2.00 |
| 02/13/2015 | EFile Payments from TexFile | Receipt # 2015-005826 | American Western Home Insurance Company | (2.00) |
| 04/28/2015 | Transaction Assessment | | | 2.00 |
| 04/28/2015 | EFile Payments from TexFile | Receipt # 2015-015550 | American Western Home Insurance Company | (2.00) |
| 08/24/2015 | Transaction Assessment | | | 2.00 |
| 08/24/2015 | EFile Payments from TexFile | Receipt # 2015-103501 | American Western Home Insurance Company | (2.00) |
| | **Plaintiff** Amanda Zamora D/B/A 3L Lots and Developers LLC / 3L Lucksinger Apartments | | | |
| | Total Financial Assessment | | | 368.00 |
| | Total Payments and Credits | | | 368.00 |
| | **Balance Due as of 08/24/2015** | | | **0.00** |

EXHIBIT C-1

| | | | | |
|---|---|---|---|---|
| 01/12/2015 | Transaction Assessment | | | 366.00 |
| 01/12/2015 | EFile Payments from TexFile | Receipt # 2015-001177 | Amanda Zamora D/B/A 3L Lots and Developers LLC / 3L Lucksinger Apartments | (366.00) |
| 07/08/2015 | Transaction Assessment | | | 2.00 |
| 07/08/2015 | EFile Payments from TexFile | Receipt # 2015-024428 | Amanda Zamora D/B/A 3L Lots and Developers LLC / 3L Lucksinger Apartments | (2.00) |

DOCKET NO. CL-15-0095-F

THE STATE OF TEXAS
COUNTY OF HIDALGO

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty (20) days after you were served this Citation and Petition, a Default Judgment may be taken against you."

To:   AMERICAN WESTERN HOME INSURANCE COMPANY
      SERVED BY SERVING THE COMMISSIONER OF INSURANCE,
      TEXAS DEPARTMENT OF INSURANCE
      333 GUADALUPE STREET
      AUSTIN, TEXAS  78701

GREETING:

       YOU ARE HEREBY COMMANDED TO APPEAR by filing a written answer to the Plaintiff's petition at or before 10 o'clock A.M. on or before the Monday next after the expiration of twenty (20) days after the date of service hereof, before the Honorable County Court At Law #6 of HIDALGO COUNTY, Texas, at the Courthouse, Hidalgo County Clerk's Office, 100 N. Closner, Edinburg, Texas.

 Said Plaintiff's Petition was filed in said Court, in this Cause Numbered CL-15-0095-F on the docket of said Court, and styled,

**AMANDA ZAMORA D/B/A 3L LOTS AND DEVELOPERS LLC / 3L LUCKSINGER APARTMENTS**
**vs.**
**AMERICAN WESTERN HOME INSURANCE COMPANY**

       The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's ORIGINAL PETITION, DEMAND FOR JURY, AND DISCOVERY TO DEFENDANT, AND STIPULATION OF DAMAGES accompanying this Citation and made a part hereof.

       NAME & ADDRESS OF ATTORNEY FOR PLAINTIFF:
              DOUGLAS E. PENNEBAKER
              200 CONCORD PLAZA DRIVE, SUITE 750
              SAN ANTONIO, TX  78216

       The officer executing this Citation shall promptly serve the same according to requirements of law, and the mandates hereof, and make due return as the law directs.

       ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at Edinburg, Texas this 12th day of January, 2015.

                                        ARTURO GUAJARDO, JR.
                                        HIDALGO COUNTY CLERK
                                        P.O. BOX 58
                                        EDINBURG, TEXAS 78540

                          BY _____ DEPUTY
                                        JACQUELYN PEREZ

**EXHIBIT C-2**

SHERIFF'S/CONSTABLE'S/CIVIL PROCESS

SHERIFF'S RETURN
      Came to hand on the _____ day of _____ , 20 \_\_\_\_ , at _____ o'clock _____ M., by Deputy (Sheriff/Constable)/Civil Process Server and to-wit the following:

DEFENDANT SERVED

      Service was EXECUTED on the above referenced Defendant, in person, in Hidalgo County, Texas and served with a true copy of this Citation, with the date of delivery endorsed thereon, together with the accompanying copy of the Plaintiff's Petition, at the following
Date, time, and place, to-wit:

      NAME _____ DATE _____ TIME _____ PLACE _____


      By: _____      By: _____
            CIVIL PROCESS SERVER                   DEPUTY SHERIFF/CONSTABLE

**DEFENDANT NOT SERVED**
      Service was ATTEMPTED at the above address on the above referenced Defendant on the following date(s) and time(s), but to no avail:

      NAME _____ DATE _____ TIME _____ PLACE _____

      NAME _____ DATE _____ TIME _____ PLACE _____

      NAME _____ DATE _____ TIME _____ PLACE _____


      By: _____      By: _____
            CIVIL PROCESS SERVER                   DEPUTY SHERIFF/CONSTABLE

## COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE OR CLERK OF THE COURT

In accordance to rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____ , my date of birth is _____ and the address is _____

_____ and i declare under penalty of perjury that the foregoing is true and correct

EXECUTED in _____ County, state of Texas, on the \_\_\_ day of _____ , 201 \_\_\_\_\_ .


_____
DECLARANT


_____
If Certified by the Supreme Court of Texas
Date of Expiration /SCH Number

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CAUSE NO. **CL-15-0095-F**

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A | § | IN THE COUNTY COURT |
| 3L LOTS AND DEVELOPERS LLC / | § | |
| 3L LUCKSINGER APARTMENTS | § | |
| v. | § | AT LAW NO. _____ |
| | § | |
| | § | |
| AMERICAN WESTERN | § | |
| HOME INSURANCE COMPANY | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION, DEMAND FOR JURY, AND DISCOVERY TO DEFENDANT, AND STIPULATION OF DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS LLC / 3L

LUCKSINGER APARTMENTS, hereinafter called "Plaintiff," complaining of AMERICAN

WESTERN HOME INSURANCE COMPANY, hereinafter called "Defendant," and for cause of

action would respectfully show unto the Court the following:

I.
### PARTIES AND RULE 190 DISCOVERY LEVEL

Plaintiff is an individual residing in Hidalgo County, Texas. Discovery should be Level III.

Defendant, **AMERICAN WESTERN HOME INSURANCE COMPANY** is a Surplus

Lines Company authorized to engage in the insurance business in the State of Texas, and may be

served by serving the **Commission of Insurance, Texas Department of Insurance, 333**

**Guadalupe Street, Austin, Texas 78701.** Service is requested by certified mail, return receipt

requested at this time.

II.

### AGENCY AND *RESPONDEAT SUPERIOR*

Whenever in this petition it is alleged that the Defendants did any act or omission, it is meant

that Defendant itself or their agents, officers, servants, employees, or representatives did such act or

1

**Accepted by: Oscar Gonzalez**

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

omission, and it was done with the full authorization or ratification of Defendant or done in the normal routine, course and scope of the agency or employment of Defendant or their agents, officers, servants, employees, or representatives.

III.

This suit is brought pursuant to the law of good faith and fair dealing as well as under common law and Chapters 541 and 542 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. In the alternative, this suit is brought for breach of contract, and for recovery under a policy of insurance. Plaintiff is a consumer of the Defendant, in that he purchased insurance from said entity and/or service to be provided by it. Said Defendant is an "individual corporation, association, partnership, or other legal entity engaged in the business of insurance." Such Defendant constitutes persons as that term is defined in Chapter 541.002 of the Texas Insurance Code.

IV.

Defendant, AMERICAN WESTERN HOME INSURANCE COMPANY is Plaintiff's Commercial Property insurance company. The actions set forth in this complaint were committed by the Defendant, or its actual or apparent agents. Plaintiff owns Apartments located at **1202 Lucksinger, aka 1208 Lucksinger, Mission, Texas.** Defendant provided coverage to the Plaintiff under a Commercial policy, for such dwelling, personal property, and other matters under insurance policies described above. During the policy term of said policy, Plaintiff sustained covered losses in the form of storm damage, including damage from windstorm and damages resulting therefrom, and Plaintiff promptly and timely and properly reported same to Defendants pursuant to the terms of the insurance policy. Plaintiff reported loss or damage from water or moisture upon having discovered same.

2

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

V.

The Plaintiff discovered the windstorm damages resulting therefrom to Plaintiff's property and property, including damage to the roof and architectural finishes. Damages include the cost of construction, repairs, and restoration of the property, necessary to repair the damages to Plaintiff's residence. These constituted covered damages under Plaintiff's Commercial Property insurance policy with the Defendant, AMERICAN WESTERN HOME INSURANCE COMPANY.

VI.

Defendant, AMERICAN WESTERN HOME INSURANCE COMPANY, and their agents visited and inspected Plaintiff's property, in connection with Plaintiff's property damage. Defendant knew or should have known that Plaintiff had already sustained significant damage to the property, requiring significant repairs as a result of a loss and peril covered by the insurance policies. AMERICAN WESTERN HOME INSURANCE COMPANY was also made aware of the need to perform repairs to the damages to plaintiff's property as a result of the wind and hail. AMERICAN WESTERN HOME INSURANCE COMPANY knew that a substantial covered loss was owed. Nonetheless, AMERICAN WESTERN HOME INSURANCE COMPANY delayed, grossly underpaid, and failed to properly investigate some or all of Plaintiff's covered losses with no reasonable basis. AMERICAN WESTERN HOME INSURANCE COMPANY has failed to act promptly or to conduct a good faith investigation. This is bad faith claim delay and/or denial and a violation of Chapters 541 and 542 of the Texas Insurance Code. AMERICAN WESTERN HOME INSURANCE COMPANY violated Article Chapters 541 and 542 of the Texas Insurance Code, and is liable for the actual damages, penalties and attorney's fees provided for therein.

VII.

Despite the fact that all conditions precedent to Plaintiff's recovery have been performed or have occurred, Defendant has failed and refused to pay the Plaintiff a just amount in accordance with

3

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

their contractual obligations, agreements, and representations. In fact, after such refusals to pay and investigate, Plaintiff was forced to file suit to seek the policy benefits to which she was entitled. AMERICAN WESTERN HOME INSURANCE COMPANY knew that substantial damage had been caused by the loss, and yet refused to investigate most or all of such damages.

VIII.

Such denials, delays, refusals and/or failures to pay by AMERICAN WESTERN HOME INSURANCE COMPANY was in bad faith, and constitute breaches of the covenant of good faith and fair dealings, which breaches were a proximate cause of damages to the Plaintiff, more specifically set forth herein below. There was no reasonable basis for denying, delaying, or failing to pay or investigate Plaintiff's claims for damage, and AMERICAN WESTERN HOME INSURANCE COMPANY knew or should have known that there was no such reasonable basis to deny, delay, and fail to pay such claims. The conduct of Defendant, AMERICAN WESTERN HOME INSURANCE COMPANY was irresponsible, unconscionable, and took advantage of the Plaintiff's lack of sophistication in insurance matters to a grossly unfair degree. Furthermore, the conduct of Defendant, AMERICAN WESTERN HOME INSURANCE COMPANY, amounts to one or more of the following:

(a) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear in violation of Chapter 542 of the Texas Insurance Code;

(b) refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of Chapter 541 of the Texas Insurance Code;

(c) failing to handle or process the Plaintiff's claims in good faith; in violation of common law as expressly stated by the Texas Supreme Court in *Vail v. Texas Farm Bureau*, 754 S.W.2d 129 at 135 (Tex. 1988);

(d) committing a course of conduct that is unconscionable;

4

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

(e) omitting any information or making any false implication or impression that was either misleading or deceptive or had the capacity to be misleading or deceptive in violation of Chapter 541 of the Texas Insurance Code;

(f) refusing to fully pay a claim without a reasonable basis in violation of common law;

(g) delaying full payment of a claim without a reasonable basis in violation of common law;

(h) denying and/or delaying payment of a claim in full without determining whether there is any reasonable basis to do so in violation of common law;

(i) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which they do not;

(j) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(k) representing than an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(l) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and

(m) violations of Chapter 541 of the Texas Insurance Code, in that they misrepresented the terms of the policy or other facts.

IX.

As a result of all of such conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court. In addition, the conduct of AMERICAN WESTERN HOME INSURANCE COMPANY was committed knowingly, and under circumstances constituting willful and wanton and reckless disregard of the rights of the Plaintiff and others similarly situated. Such conduct of AMERICAN WESTERN HOME INSURANCE COMPANY was negligent and tortuous. The conduct of AMERICAN WESTERN HOME INSURANCE COMPANY constituted negligent misrepresentation of fact, or actionable fraud. The conduct of AMERICAN WESTERN HOME INSURANCE COMPANY proximately caused the injuries and damages to the Plaintiff for

5

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

which she sues.   Plaintiff seeks actual damages from AMERICAN WESTERN HOME INSURANCE COMPANY. The total damages sought by Plaintiff against Defendants for all elements of damage does not exceed the sum of $74,999, including exemplary and punitive damages, penalties, and attorneys' fees, but exclusive of interest and costs.  Plaintiff will not seek or accept any damages, recover or award that may be rendered in the above-captioned matter in excessive of $74,999.00. Further, Plaintiff herein hereby renounces any judgment in excessive of $74,999, exclusive of interest and costs which might be rendered in her favor.

X.

All of the conditions precedent to bringing this suit under the policy and to the Defendant's liability to the Plaintiff under the policy for the claims alleged have been performed or have occurred.

XI.

Defendant has, by its conduct, breached their contract of insurance with the Plaintiff.  Such breach proximately caused damages to the Plaintiff including consequential damages.  In addition, Plaintiff is entitled to recover attorney's fees in connection with Plaintiff's contractual causes of action.  In addition, as a supplement to such contractual causes of action, each Defendant is liable for the statutory damages and penalties set out in Chapter 542 of the Texas Insurance Code.

XII.

Defendant owes the Plaintiff significant sums for known losses.  Further, under the contract of insurance, the Defendant owes the Plaintiff reasonable compensation for additional living expenses because repairs to be performed to their residence and required by the above losses will require that he may incur living expenses over and above those normally incurred while residing in the property.

6

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

## XIII.

The conduct of AMERICAN WESTERN HOME INSURANCE COMPANY was knowing and therefore may be subject to liability for additional damages under the Texas Insurance Code, and/or the Texas Deceptive Trade Practices Act, Plaintiff and Plaintiff's attorney are also entitled to attorney's fees in connection with the bringing of this action for breach of contract or under relevant statute. In the alternative, AMERICAN WESTERN HOME INSURANCE COMPANY's conduct was malicious and fraudulent, and therefore, Plaintiff seeks punitive damages.

## XIV.

All of the conditions precedent to bringing this suit under the policy and to the Defendant's liability to the Plaintiff under the policy for the claims alleged have been performed or have occurred. More than sixty days prior to the filing of this petition, written demand for payment and notice of complaint pursuant to the Texas Insurance Code, Chapter 541, et seq., was sent to the Defendant, or compliance with said notice is excused. All notices and proofs of loss were timely and properly given in such manner as to fully comply with the terms and conditions of the relevant insurance policies and applicable law. Plaintiff complied with all terms and conditions of the policy, but her claim was nonetheless not paid in full. *Such refusals to pay waive any further compliance with said policy by Plaintiff, and leaves her free to sue for those benefits to which she is entitled that were denied or underpaid.* In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, or requirements, the Defendant waived them, the Defendant is estopped from asserting them, and/or the Plaintiff substantially complied with them. Plaintiff makes the same allegations of waiver or estoppel as to every defense, condition, or exclusion pleaded by the Defendant, and as to each claim for breach of contract or statutory violation as to said Defendant.

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

XV.

As to any exclusion or endorsement relied upon by the Defendant, Plaintiff would show that

such is void and does not form a portion of Plaintiff's insurance policy with Defendant, AMERICAN

WESTERN HOME INSURANCE COMPANY. The reason this is so includes, but is not limited to

the following:

(a)     there is no consideration for such exclusion;

(b)     such exclusion or exclusionary endorsement was not delivered with the policy, and
        hence is of no force and effect;

(c)     such exclusion violates Chapters 541 and 542 of the Texas Insurance Code, and it is
        void as against public policy;

(d)     such exclusion and its use in this case violates Chapter 541 and 542 of the Texas
        Insurance Code and is void as against public policy;

(e)     such exclusion violates Chapter 541 and 542 of the Texas Insurance Code and is
        unconscionable, and is void as against public policy;

(f)     such exclusion is adhesive;

(g)     any such exclusion is void as against public policy against creating a forfeiture, or ex
        post-facto penalty;

(h)     the attachment of such exclusion constitutes bad faith cancellation of a portion of the
        Plaintiff's policy with Defendants.  In particular, such cancellation of a portion of
        Plaintiff's coverage was in violation of the policy contract's own terms and also in
        violation of Chapter 541 and 542 of the Texas Insurance Code of the Texas Insurance
        Code.  Such exclusion should be declared void, and of no force and effect, and the
        policy should be reformed to so reflect;

(i)     the clear and unambiguous language of the policy provides coverage for dwelling
        damage caused by water, including the cost of access to fix any leaking plumbing,
        system, or appliance.

(j)     In the alternative, any other construction of the language of the policy is void as
        against public policy;

(k)     In the alternative, should the Court find any ambiguity in the policy, the rules of
        construction of such policies mandates the construction and interpretation urged by
        Plaintiff;

8

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

(l)     In the alternative, Defendants are judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

(m)    In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff plead the doctrine of mutual mistake requiring reformation.

(n)    Such exclusion or interpretation is void as against public policy and/or in violation of the Texas Insurance Code.

(o)    The clear and ambiguous language of the policy provides coverage for dwelling damage caused by accidental water leakage from a plumbing, heating, or air conditioning system or other appliance, including the cost of access to fix the leaking system, regardless of any other language or exclusion in the policy.

XVI.

Plaintiff asserts all statutory claims, demands, and causes of action assertable under state law from the pleaded scenario and facts, but only seeks breach of contract and Chapter 542 of the Texas Insurance Code causes of action against AMERICAN WESTERN HOME INSURANCE COMPANY at this time for actual damages and attorney's fees Chapter 542 penalties.  Plaintiff seeks from AMERICAN WESTERN HOME INSURANCE COMPANY actual, additional, exemplary, as well as all other damages and penalties available at law, including loss of the use, rents, and enjoyment of the property.

XVII.
DEMAND FOR JURY

Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff herein requests a jury trial and along with the filing of the Original Petition have tendered to the Clerk of the Court the statutory jury fee.

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable

Court that upon final hearing and trial hereof, this Honorable Court grant to the Plaintiff such relief

as to which she may show herself justly entitled, either at law or in equity, either general or special,

including judgment against the Defendant for actual damages, attorney's fees, costs of suit, statutory

penalties, and prejudgment and post judgment interest, if allowed by law, and including judgment for

additional damages and punitive damages under the facts set forth in this or any amended pleading.

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

Respectfully submitted,

PENNEBAKER LAW FIRM
A Professional Corporation
200 Concord Plaza Drive, Suite 750
San Antonio, Texas 78216
Telephone:    (210) 562-2888
Telecopier:   (210) 562-2880

By: _____

DOUGLAS E. PENNEBAKER
State Bar No. 00788178
Lead counsel
ATTORNEY FOR PLAINTIFF

LAW OFFICES OF MCALLEN-GONZALEZ
2102 W. University Dr.
Edinburg, Texas 78539
Telephone:    (956) 383-2143
Telecopier:   (956) 383-2147

By: _____        *for Willie McAllen*
WILLIE MCALLEN
State Bar No. 24047468
JOSE G. GONZALEZ
State Bar No. 24053234

11

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

## CL-15-0095-F

### PLAINTIFF'S REQUESTS FOR DISCLOSURE TO DEFENDANT

Pursuant to Texas Rule of Civil Procedure 194, you are hereby requested to disclose, within

fifty (50) days of service of this request, the information or material described in Rule 194.2(a)-(k),

as described below:

(a)      the correct names of the parties to the lawsuits;

(b)      the name, address, and telephone number of any potential parties;

(c)      the legal theories and, in general, the factual basis of Plaintiff's claims;

(d)      the amount and any method of calculating economic damages;

(e)      the name, address and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

(f)      for any testifying expert:

     (1)      the expert's name, address and telephone number;

     (2)      the subject matter on which the expert will testify;

     (3)      the general substance of the expert's mental impressions and opinions and a brief summary of the basis of them, or if the expert is not retained by, employed, or otherwise subject to the control of Plaintiff, documents reflecting such information;

     (4)      if the expert is retained, employed by or otherwise subject to the control of Plaintiff:

         (A)      all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony;

         (B)      the expert's current resume and bibliography;

(g)      any indemnity or insuring agreements;

(h)      any settlement agreements, described in Rule 192.3(g);

(i)      any witness statements, described in Rule 192.3(h);

(j)      all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

(k)      all medical records and bills obtained by the responding party by the responding party by virtue of an authorization furnished by the requesting party.

I.

In accordance with Texas Rule of Civil Procedure 194.3, please serve written responses

within fifty (50) days after service of this request.

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

II.

In compliance with Rule 194.4 of the Texas Rules of Civil Procedure, please produce

responsive documents to the Pennebaker Law Firm, a Professional Corporation, 200 Concord

Plaza Drive, Suite 750, San Antonio, Texas 78216.

Respectfully submitted,

PENNEBAKER LAW FIRM
A Professional Corporation
200 Concord Plaza Drive, Suite 750
San Antonio, Texas 78216
Telephone:   (210) 562-2888
Telecopier:   (210) 562-2880

By: _____
    DOUGLAS E. PENNEBAKER
    State Bar No. 00788178
    Lead counsel
ATTORNEY FOR PLAINTIFF

LAW OFFICES OF MCALLEN-GONZALEZ
2102 W. University Dr.
Edinburg, Texas 78539
Telephone:   (956) 383-2143
Telecopier:   (956) 383-2147

By: _____ *for Willie McAllen*
    WILLIE MCALLEN
    State Bar No. 24047468
    JOSE G. GONZALEZ
    State Bar No. 24053234

13

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

## CLAIM SPECIFIC INTERROGATORIES TO DEFENDANT INSURER

1.  Identify all persons, address, including job title, dates of employment, and a description of each individual's role in the claim made the basis of this Lawsuit, if any, for all persons providing information for the answers these interrogatories.

    ANSWER:

2.  Identify all persons and/or entities who handled the claim made the basis of the Lawsuit on behalf of Defendant.

    ANSWER:

3.  State the following concerning notice of claim and timing of payment:

    a.  The date and manner in which Defendant received notice of the claim;
    b.  The date and manner in which Defendant acknowledged receipt of the claim;
    c.  The date and manner in which Defendant commenced investigation of the claim;
    d.  The date and manner in which Defendant requested from the Plaintiffs all items, statements, and forms reasonably necessary that Defendant reasonably believed, at the time, would be required from the Plaintiffs; and
    e.  The date and manner in which Defendant notified the claimant(s) in writing of the acceptance or rejection of the claim.
    f.  To the extent Defendant felt it was applicable to this claim, did Defendant request an additional 45 days to accept or reject the claim, and if so, for what reason and state the date and manner in which Defendant made that request.
    g.  The date and manner in which you notified Plaintiff of acceptance or rejection of coverage for all or any portion of Plaintiffs' claim; and
    h.  The date and manner of all payments made to insured, identifying whether payment was made under structure, additional structure, contents and/or ALE provisions.

    ANSWER:

4.  Identify each inspection of the Property made the basis of this Lawsuit by:
    a.  The name and job title of each person who inspected the Property;
    b.  The date of each inspection;
    c.  The purpose of each inspection; and
    d.  Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

14

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00.00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

ANSWER:

5.  If Defendant is aware of documents that are not in Defendant's possession that are related the Claim and were gathered by a person or entity working on behalf of Defendant (directly or indirectly), identify the documents, including the persons and/or entities in possession of those documents with last known addresses.

    ANSWER:

6.  State all dates on which Defendant closed Plaintiffs' claim and to the extent Defendant asserts statute of limitations as a defense, state all dates and manners in which Defendant notified Plaintiff(s).

    ANSWER:

7.  Does Defendant contend that Plaintiff(s) failed to provide proper notice of the claim made the basis of this Lawsuit under either the policy or the Texas Insurance Code, and, if so, describe how the notice was deficient, identifying any resulting prejudice caused to Defendant.

    ANSWER:

8.  At the time the claim made the basis of this Lawsuit was investigated by Defendant (and prior to the anticipation of litigation), describe Defendant's understanding of areas of the property (i.e., roof, interior) Defendant was investigating, identifying the coverage sections (i.e., dwelling, other structure, ALE, contents, and/or code upgrade) of the Policy upon which the claim was paid or denied.

    ANSWER:

9.  Does Defendant contend that at the time the claim made the basis of this Lawsuit was investigated by Defendant (and prior to anticipation of litigation), Plaintiffs failed to protect the property from further damage or loss, make reasonable and necessary repairs or temporary repairs required to protect the Property as provided under the Policy?

    ANSWER:

10. At the time the claim made the basis of this Lawsuit was investigated by Defendant (and prior to anticipation of litigation), state whether the Plaintiff(s) failed to exhibit/provide access to the Property as reasonably requested by Defendant, and, if so, describe how Plaintiff failed to do so, identifying any resulting prejudice caused to Defendant.

    ANSWER:

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

11.     At the time the claim made the basis of this Lawsuit was investigated (and prior to anticipation of litigation), identify all documents and information requested from Plaintiff(s) stating the date and manner in which the request was made to Plaintiffs. If Defendant contends that Plaintiff(s) failed to provide Defendant with requested documents and/or information, identify all requests Plaintiffs did not respond and if Defendant denied any portion of the claim based on Plaintiffs' failure to respond.

ANSWER:

12.     At the time the claim made the basis of this Lawsuit was investigated (and prior to the anticipation of litigation), did Defendant request or take any statements and/or examinations under oath of Plaintiff(s) as provided under the policy. If so, state the date and manner in which Defendant made the request, the date on which any statements or examinations under oath were taken and the manner in which they were recorded or documented, identifying all persons who requested and/or took the statement or examination under oath. If Defendant contends that Plaintiff(s) failed to provide Defendant with a requested statement or examination, describe how Plaintiff failed to comply with any requests, to the extent it was relied upon to deny any portion of Plaintiffs' claim.

ANSWER:

13.     At the time the claim made the basis of this Lawsuit was investigated and the Property inspected (and prior to anticipation of litigation), describe all damage attributable to the storm observed at the Property by Defendant or any persons or entities on behalf of Defendant.

ANSWER:

15.     Identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion identified, state the reason(s) that Defendant relied upon to apply that exclusion.

ANSWER:

16.     Describe how Defendant determined whether overhead and profit ("O&P") should be applied to the claim made the basis of this Lawsuit, identifying the criteria for that determination.

ANSWER:

17.     State whether sales tax was paid by Defendant on all materials and/or labor and the method of calculation. To the extent this information is reflected on an estimate, Defendant can refer Plaintiff(s) to such estimate.

ANSWER:

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

18.    Identify all items on the claim made the basis of this Lawsuit to which Defendant applied depreciation, stating for each item the criteria used and the age of the item.

ANSWER:

19.    To the extent Defendant utilized an estimating software and modified the manufacturer's settings with respect to Plaintiffs' claim, identify those modifications.

ANSWER:

20.    State whether Defendant applied depreciation to the tear off of the damaged roof and/or other debris removal in the claim made the basis of this Lawsuit, identifying the basis for that depreciation and the applicable policy section under which the tear off was paid under.

ANSWER:

21.    Identify all price lists used to prepare all estimates on the claim made the basis of this Lawsuit, stating the manufacturer, version, date and geographical area. For any price list developed by a third party vendor, identify any additions, deletions, alterations or modifications made by Defendant, describing the change and purpose of the change for preparing an estimate on the claim made the basis this Lawsuit.

ANSWER:

22.    State whether of any persons and/or entities who handled the claim made the basis this Lawsuit failed to follow any rules, guidelines, policies, or procedures implemented by Defendant for the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012 in regards to the adjustment of this claim. If so, identify each person and the specific rule, guideline, policy, or procedure that was violated.

ANSWER:

23.    To the extent Defendant is aware, state whether the estimate(s) prepared for the claim made the basis this Lawsuit failed to identify, note, or document any storm related damage at the Property. If so, identify each item of damage that was not properly identified, noted, or documented.

ANSWER:

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

24.   To extent Defendant is aware, state whether the estimate(s) prepared for the claim made the basis of lawsuit wrongly included or excluded any item or payment. If so, identify each item or payment and state whether it should have been included or excluded from the estimates prepared on the claim made the basis this Lawsuit.

ANSWER:

25.   To the extent Defendant is aware, state any violations of Texas Insurance Code Section 541 that were discovered on this claim during the claims handling process.

ANSWER:

26.   To the extent Defendant is aware, state any violations of Texas Insurance Code Section 542 that were discovered on this claim during the claims handling process.

ANSWER:

27.   To the extent Defendant is aware, state any violations of the requirements or obligations owed to Plaintiff(s) under the Policy relating the claim made the basis of this Lawsuit that were discovered during the claims handling process.

ANSWER:

28.   State the date Defendant first anticipated litigation.

ANSWER:

29.   Identify all evidence that may be used to impeach, by proof of final conviction of any felony or crime of moral turpitude, of any witness, including any party witness, by stating the following identifying information, pursuant to Tex. R. Evid. 609:
      a.   the name of the accused;
      b.   the charged offense;
      c.   whether the crime was a felony or involved moral turpitude;
      d.   the date of final conviction; and
      e.   the style, case number, and county of the proceeding.

ANSWER:

30.   Identify any and all witnesses who may be called to testify at trial pursuant to Rule 192.3(d) of the Texas Rules of Civil Procedure.

ANSWER:

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

31.   Pursuant to Rule 192.3(e) of the Texas Rules of Civil Procedure, for each consulting expert, or expert who is not expected to be called as a witness but whose work product 1) forms the basis either in whole or in part of the opinions of an expert who is to be called as a witness and/or 2) has been reviewed or relied upon by a testifying expert witness, please state:

   a.   The name, address, and telephone of such expert;
   b.   The number of times that expert has been retained by a defendant in any case;
   c.   The number of times that expert has been retained by a plaintiff in any case;
   d.   The number of times that expert has been retained by the attorney representing any Defendants in this suit;
   e.   The number of times that expert has been retained by the law firm representing any Defendants in this suit; and
   f.   The amount of compensation received or to be received in this case.

   ANSWER:

32.   If you contend that the Policy is void for any reason, state the specific factual bases for that contention, identifying any and all investigations, the factors considered and the conclusion reached and the evidence that is the basis for that conclusion.

   ANSWER:

33.   If you contend that the Plaintiff(s) made any misrepresentation regarding the Policy or the claim made the basis of this Lawsuit, state what specific misrepresentation(s) was/were made and the factual bases for your contention.

   ANSWER:

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

Respectfully submitted,

PENNEBAKER LAW FIRM
A Professional Corporation
200 Concord Plaza Drive, Suite 750
San Antonio, Texas 78216
Telephone:      (210) 562-2888
Telecopier:     (210) 562-2880


By: _____
        DOUGLAS E. PENNEBAKER
        State Bar No. 00788178
        Lead counsel
ATTORNEY FOR PLAINTIFFS

LAW OFFICES OF MCALLEN-GONZALEZ
2102 W. University Dr.
Edinburg, Texas 78539
Telephone:      (956) 383-2143
Telecopier:     (956) 383-2147


By: _____ *for Willie McAllen*
        WILLIE MCALLEN
        State Bar No. 24047468
        JOSE G. GONZALEZ
        State Bar No. 24053234

20

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

## CLAIM SPECIFIC REQUEST FOR PRODUCTION TO INSURER

1.  The following insurance documents issued for the Property as identified in the Petition:
    a.  the policy at issue for the date of loss as identified in the Petition; and
    b.  the policy declarations page for the 3 years preceding the storm.

    RESPONSE:


2.  Produce underwriting files and documents relating to the underwriting for all insurance policies for the Property identified in the Petition. This request is limited to the past 5 years. To the extent Defendant contends that the underwriting file or documents older than 5 years impact the damages or coverage, produce that underwriting file or document.

    RESPONSE:


3.  All documents relating to the condition or damages of the Property or any insurance claim on the Property identified in the Petition.

    RESPONSE:


4.  All documents relating to any real property insurance claims made by the Plaintiff(s). This request is limited to the past 5 years. To the extent Defendant contends that documents older than 5 years impact the damages or coverage, produce that document.

    RESPONSE:


5.  All requests for information to any third party about the Property, the Plaintiff(s), or the claims made the basis of this Lawsuit.

    RESPONSE:


6.  All documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage.

    RESPONSE:

21

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

## CL-15-0095-F

7.  All documents obtained from any person(s) or entity(ies) and governmental agencies on behalf of Defendant or by Defendant relating to the Plaintiff(s), the Property, the Policy, or the claims made the basis of this Lawsuit. This request includes all documents obtained by way of deposition on written questions.

    RESPONSE:

8.  All documents received (prior to litigation) directly or indirectly from Plaintiff(s) or created by Plaintiff(s) related to the Property made the basis of this lawsuit. This request is limited to the past 5 years. To the extent Defendant contends that any document older than 5 years impact the damages or coverage, produce that document.

    RESPONSE:

9.  Produce a copy of all price lists used to prepare any estimates for the claim made the basis of this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, you can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

    RESPONSE:

10. To the extent Defendant created or altered any prices used in the preparation of an estimate in the claim made the basis of this Lawsuit, produce all documents related to the creation or alteration of the price, including the original price for that item and the factual bases for the creation or alteration.

    RESPONSE:

11. A complete copy the personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews, evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.

    RESPONSE:

12. All organizational charts, diagrams, lists, an/or documents reflecting each department, division or section of Defendant's company to which the claim made the basis of this Lawsuit was assigned.

    RESPONSE:

22

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

13.    All Texas insurance licenses and/or certifications in effect that the time of the claims arising out of the Hidalgo County hail storms which occurred on or about March 29, 2012 and/or April 20, 2012 for all persons who worked on the claim made the basis of this Lawsuit, including any document relating to the application, issuance or review of those licenses and/or certifications. This request excludes those who performed merely ministerial acts, i.e. people who answer phones, file clerks whose only job duty is to stamp "received," etc.

RESPONSE:

14.    If an engineer and/or engineering firm evaluated the Property, produce all reports written at the request of Defendant by that engineer or engineering firm within the last 3 years. This request is limited to the extent that the engineer and/or engineering firm was used during claims handling.

RESPONSE:

15.    Produce all documents showing amounts billed and paid to any engineer and/or engineering firm identified in response to Request for Production No. 17 above within the last three years. A summary is acceptable in lieu of actual invoices or payments.

RESPONSE:

16.    All documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation.

RESPONSE:

17.    All documents relating to issues of honesty, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior which resulted in disciplinary action by Defendant of any person(s) or entity(ies) who handled the claim made the basis of this Lawsuit, the Plaintiff(s) or any person assisting on the claim made the basis of this Lawsuit.

RESPONSE:

18.    All documents relating to work performance, claims patterns, claims problems, commendations, claims trends, claims recognitions, and/or concerns for any person who handled the claim made the basis of this Lawsuit.

23

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

**CL-15-0095-F**

RESPONSE:

19.   All XactAnalysis reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit relating to claims arising out of the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012.

RESPONSE:

20.   Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 19 above.

RESPONSE:

21.   All Simsol Management reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit relating to claims arising out of the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012.

RESPONSE:

22.   Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 21 above.

RESPONSE:

23.   For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert: all documents or tangible things that have been provided to, reviewed by, or prepared for the testifying expert.

RESPONSE:

24.   Pursuant to Texas Rule of Evidence 609(f), provide all documents evidencing conviction of a crime which you intend to use as evidence to impeach any party or witness.

RESPONSE:

25.   All indemnity agreements in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00 00 AM
Hidalgo County Clerks Office

CL-15-0095-F

RESPONSE:

26.   All contracts in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

RESPONSE:

27.   All confidentiality agreements and/or instructions regarding confidentiality in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who the claim made the basis of the Lawsuit.

RESPONSE:

28.   All documents between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit regarding document retention policy in effect at the time of Plaintiffs' claim.

RESPONSE:

29.   To the extent the claim involves rescinding of the policy, all documents regarding Defendant's standards for investigating and rescinding and/or voiding a policy.

RESPONSE:

25

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

Respectfully submitted,

PENNEBAKER LAW FIRM
A Professional Corporation
200 Concord Plaza Drive, Suite 750
San Antonio, Texas 78216
Telephone:      (210) 562-2888
Telecopier:     (210) 562-2880

By: _____

    DOUGLAS E. PENNEBAKER
    State Bar No. 00788178
    Lead counsel
ATTORNEY FOR PLAINTIFFS

LAW OFFICES OF MCALLEN-GONZALEZ
2102 W. University Dr.
Edinburg, Texas 78539
Telephone:      (956) 383-2143
Telecopier:     (956) 383-2147

By: _____      *for Willie McAllen*
    WILLIE MCALLEN
    State Bar No. 24047468
    JOSE G. GONZALEZ
    State Bar No. 24053234

Accepted by: Oscar Gonzalez

Electronically Submitted
1/12/2015 12:00:00 AM
Hidalgo County Clerks Office

CL-15-0095-F

## STIPULATION OF DAMAGES

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff, AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS LLC / 3L LUCKSINGER APARTMENTS, hereby stipulates that the amount in controversy in the above-styled and numbered cause does not exceed the sum or value of $74,999.00, exclusive of interest and costs. Specifically, AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS LLC / 3L LUCKSINGER APARTMENTS, Plaintiff, stipulates and agrees that the "amount in controversy" includes any and all damages, exclusive of interest and costs, of which Plaintiff seeks to recover by and through the lawsuit filed herein.

Plaintiff, AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS LLC / 3L LUCKSINGER APARTMENTS, understands that this stipulation will be filed with the Court and understands that the stipulation will bind the parties in the above-referenced lawsuit to the terms stated herein and through his counsel hereby agrees that he will refuse to execute on the amount exceeding $74,999.00.

Lead counsel for Plaintiff, Douglas Pennebaker of the PENNEBAKER LAW FIRM, agrees to waive any award in excess of $74,999.00.

AGREED TO BY:

PENNEBAKER LAW FIRM
200 Concord Plaza Drive Dr., Suite 750
San Antonio, Texas 78216
Telephone: (210) 562-2888
Telecopier: (210) 562-2888

By: _____
DOUGLAS E. PENNEBAKER
State Bar No. 00788178

ATTORNEY FOR PLAINTIFF

SUBSCRIBED AND SWORN TO BEFORE ME, on 11th day of January, 2015, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

27

STYLED: AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS LLC / 3L LUCKSINGER APARTMENTS VS. AMERICAN
WESTERN HOME INSURANCE COMPANY
(e.g., John Smith v. All American Insurance Co.; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name:<br>Douglas E. Pennebaker<br><br>Address:<br>200 Concord Plaza Drive, Suite 750<br><br>City/State/Zip:<br>San Antonio, TX 78216<br><br>Signature: | Email:<br>Doug@pennebakerlaw.com<br><br>Telephone:<br>210-562-2888<br><br>Fax:<br>210-562-2880<br><br>State Bar No.:<br>00788178 | Plaintiff(s)/Petitioner(s):<br><br>AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS LLC / 3L LUCKSINGER APARTMENTS<br><br>Defendant(s)/Respondent(s):<br><br>AMERICAN WESTERN HOME INSURANCE COMPANY<br><br>[Attach additional page as necessary to list all parties] | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: _____<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case (select only 1):**

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☒ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>  ☐ Accounting<br>  ☐ Legal<br>  ☐ Medical<br>  ☐ Other Professional | ☐ Eminent Domain/<br>  Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br>_____ | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>  ☐ With Children<br>  ☐ No Children | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity |
| *Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract:<br>_____ |    Liability: _____<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>  ☐ Asbestos/Silica<br>  ☐ Other Product Liability<br>   List Product:<br><br>☐ Other Injury or Damage:<br>_____ | **Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—<br>  Pre-indictment<br>☐ Other: _____ | **Other Family Law**<br>☐ Enforce Foreign<br>  Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities<br>  of Minority<br>☐ Other: _____ | ☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with<br>  Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Paternity/Parentage<br>☐ Termination of Parental<br>  Rights<br>☐ Other Parent-Child:<br>_____ |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment<br>_____ | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br>  Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: _____ | | |
| **Tax** | *Probate & Mental Health* | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: _____ | | |

**3. Indicate procedure or remedy, if applicable (may select more than 1):**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

Electronically Submitted
2/13/2015 12:50:30 PM
Hidalgo County Clerks Office

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| **AMANDA ZAMORA, D/B/A 3L LOTS** | § | **IN THE COUNTY COURT** |
| **AND DEVELOPERS LLC / 3L** | § | |
| **LUCKSINGER APARTMENTS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **AT LAW NO. 6** |
| | § | |
| **AMERICAN WESTERN HOME** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | **HIDALGO COUNTY, TEXAS** |

### DEFENDANT AMERICAN WESTERN HOME INSURANCE COMPANY'S
### ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Defendant American Western Home Insurance Company ("Defendant") files its original answer and affirmative defenses to Plaintiff Amanda Zamora, d/b/a 3L Lots and Developers LLC / 3L Lucksinger Apartments ("Plaintiff") Original Petition, Demand for Jury, and Discovery to Defendant, and Stipulation of Damages (the "Petition").

## I.    GENERAL DENIAL

Defendant asserts its general denial as authorized by Rule 92 of the Texas Rules of Civil Procedure to the allegations contained in Plaintiff's Petition, and any amendments or supplements thereto, and upon trial of this case will require Plaintiff to prove each and every allegation asserted against it by a preponderance of the evidence, as is required by the laws of this State of Texas and the Constitution of the United States.

## II.    AFFIRMATIVE DEFENSES

1.    Plaintiff's claims are barred because Plaintiff lacks standing to assert them.

EXHIBIT C-3

Accepted by: Ester Espinoza

Electronically Submitted
12/13/2015 12:50:30 PM
Hidalgo County Clerks Office

2.      Plaintiff's claims are barred in whole or in part due to the terms, limitations, restrictions, exclusions, and endorsements contained in and to the Policy that is the basis of Plaintiff's suit.

3.      Plaintiff's claims against Defendant are barred under the doctrines of settlement and release.

4.      Plaintiff's claims are barred by the equitable doctrine of waiver.

5.      Plaintiff's claims are barred by the applicable statute of limitations.

6.      Plaintiff's claims are barred by the election of rights doctrine.

7.      Plaintiff's claims are barred by the "one satisfaction" doctrine.

8.      Plaintiff's claims are barred by the economic loss rule.

9.      Plaintiff's claims are barred in whole or in part by accord and satisfaction.

10.     Plaintiff's claims are barred in whole or in part by setoff.

11.     Plaintiff failed to mitigate or minimize its alleged damages.

12.     Plaintiff's claims are barred by the statute of frauds.

13.     Plaintiffs are not entitled to 18% statutory interest.

14.     Defendant's actions and omissions, if any, respecting the subject matters in the alleged causes of action, and each of them, were undertaken in good faith, with the absence of malicious intent to injure Plaintiff, and constitute lawful, proper, justified means to further the business purposes of Defendant.

15.     Plaintiff's damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and entities, including Plaintiff, and said acts, omissions, or breaches were intervening and superseding causes of Plaintiff's damages, if any.  Defendant asserts its right to comparative responsibility as provided in Chapter 33 of the Texas Civil Practice and

Electronically Submitted
2/13/2015 12:50:30 PM
Hidalgo County Clerks Office

Remedies Code and request that the fact finder apportion responsibility as provided in Chapter 33.

16.     Defendant claims all offsets and credits available under Chapter 33 of the Texas Civil Practice and Remedies Code.

17.     Any and all claims alleged by Plaintiff are barred, in whole or in part, because Plaintiff's damages, if any, were caused by a third-party acting outside the scope of his or her authority.

18.     Any and all claims alleged by Plaintiff are barred, in whole or in part, to the extent they seek an improper punitive damages award for an alleged single wrong because such an award would violate Defendant's rights guaranteed by the United States Constitution, including, without limitation, the Due Process and Equal Protection provisions of the Fourteenth Amendment and the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, and Defendant's rights to the Due Course of Law under the Texas Constitution.

19.     Plaintiff is not entitled to punitive damages, and any and all excessive amounts of such damages sought herein violate Chapter 41 of the Texas Civil Practice and Remedies Code, the Texas Constitution, and the United States Constitution, all of which set limits on the award of punitive damages.

20.     Any award of pre-judgment interest is limited by the dates and amounts as set forth in Chapter 304 of the Texas Finance Code and/or Chapter 41 of the Texas Civil Practice & Remedies Code.

21.     Defendant reserves the right to later amend or add to these affirmative defenses.

### III.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant American Western Home Insurance Company respectfully requests that the Court enter judgment that Plaintiff take nothing in its suit, that the Court enter an order dismissing Plaintiff's suit with prejudice, Defendant recovers its costs and attorneys' fees, and for all other relief to which Defendant may be justly entitled.

Respectfully submitted,

By: */s/ Valerie Henderson*
    **Eddy De Los Santos**
    Texas Bar No. 24040790
    **Valerie Henderson**
    Texas Bar No. 24078655
    **BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ. P.C.**
    1301 McKinney Street
    Suite 3700
    Houston, Texas 77010
    (713) 650-9700 - Telephone
    (713) 650-9701 - Facsimile

    *Attorneys for Defendant American Western
    Home Insurance Company*

### CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, a true and correct copy of the foregoing was served as indicated on the following counsel pursuant to the Texas Rules of Civil Procedure:

| | |
|---|---|
| Douglas E. Pennebaker | Willie McAllen |
| PENNEBAKER LAW FIRM, PC | Jose G. Gonzalez |
| 200 Concord Plaza, Suite 750 | LAW OFFICES OF MCALLEN-GONZALEZ |
| San Antonio, Texas 78216 | 2102 W. University Dr. |
| Via Facsimile No. (210) 562-2880 | Edinburg, Texas 78539 |
| | Via Facsimile No. (956) 383-2147 |

*/s/ Valerie Henderson*
Valerie Henderson



BEARMAN, CALDWELL & BERKOWITZ, PC

1301 MCKINNEY STREET
SUITE 3700
HOUSTON, TEXAS 77010

PHONE:   713.650.9700
FAX:       713.650.9701

www.bakerdonelson.com

FACSIMILE TRANSMISSION FORM

**PLEASE DELIVER IMMEDIATELY**

**DATE / TIME:** FEBRUARY 13, 2015  /  12:58 PM

| | | |
|---|---|---|
| **DELIVER TO:** | **FAX NO.:** | **PHONE NO.:** |

Douglas E. Pennebaker                                    (210) 562-2880
PENNEBAKER LAW FIRM, PC

Willie McAllen                                                (956) 383-2147
Jose G. Gonzales
LAW OFFICES OF MCALLEN-GONZALEZ

**FROM:**                       Valerie Henderson

**PHONE NO.:**              (713) 286-7172

**FAX NO.:**                   (713) 650-9701

**RE:**                          Cause No. CL-15-0095-F; *Amanda Zamora d/b/a 3L Lots and Developers LLC / 3L Lucksinger Apartments v. American Western Home Insurance Company*; County Court at Law No. 6, Hidalgo County, Texas

**NUMBER OF PAGES:**     5   (including fax cover)

**MESSAGE**: Please see attached Defendant American Western Home Insurance Company's Original Answer and Affirmative Defenses.

*Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.*

*Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.*

HO MCC01 853374 v1
2902013-000102  02/13/2015

**Cearley, Maria**

**From:** send@mail.efax.com
**Sent:** Friday, February 13, 2015 1:05 PM
**To:** Cearley, Maria
**Subject:** Successful transmission to 12105622880. Re: Amanda Zamora, et al v. American Western Home Insurance Company



Dear Maria Cearley,

**Re: Amanda Zamora, et al v. American Western Home Insurance Company**

The 5 page fax you sent through eFax Solutions to 12105622880 was successfully transmitted at 2015-02-13 19:04:46 (GMT).

The length of transmission was 157 seconds.

The receiving machine's fax ID: 210-562-2880.

Best Regards,

If you need additional assistance, please visit our online help center at https://www.efaxcorporate.com/corp/twa/page/customerSupport. Thank you for using the eFax Solutions service.

eFax Solutions

---

**Customer Service**
Online Help: https://www.efaxcorporate.com/corp/twa/page/customerSupport
Tel: 1-323-817-3202
Email: corporatesupport@mail.efax.com

---

© 2009 j2 Global Communications, Inc. All rights reserved.
eFax Corporate® is a registered trademark of j2 Global Communications, Inc.

**Cearley, Maria**

---

**From:** send@mail.efax.com
**Sent:** Friday, February 13, 2015 1:06 PM
**To:** Cearley, Maria
**Subject:** Successful transmission to 19563832147. Re: Amanda Zamora, et al v. American Western Home Insurance Company



Dear Maria Cearley,

**Re: Amanda Zamora, et al v. American Western Home Insurance Company**

The 5 page fax you sent through eFax Solutions to 19563832147 was successfully transmitted at 2015-02-13 19:06:05 (GMT).

The length of transmission was 212 seconds.

The receiving machine's fax ID: .

Best Regards,

If you need additional assistance, please visit our online help center at https://www.efaxcorporate.com/corp/twa/page/customerSupport. Thank you for using the eFax Solutions service.

eFax Solutions

---

**Customer Service**
Online Help: https://www.efaxcorporate.com/corp/twa/page/customerSupport
Tel: 1-323-817-3202
Email: corporatesupport@mail.efax.com

---

© 2009 j2 Global Communications, Inc. All rights reserved.
eFax Corporate® is a registered trademark of j2 Global Communications, Inc.

POWERED BY

Accepted by: San Juana Garcia

Electronically Submitted
4/15/2015 9:33:16 AM
Hidalgo County Clerks Office

 **Texas Department of Insurance**

General Counsel, Mail Code 113-2A
333 Guadalupe • P. O. Box 149104, Austin, Texas 78714-9104
512-463-6326 telephone • 512-490-1064 fax • www.tdi.texas.gov

January 16, 2015

Douglas E. Pennebaker
Pennebaker Law Firm
200 Concord Plaza Drive, Suite 750
San Antonio, Texas 78216

Re:  Cause No. CL-15-0095-F; styled *Amanda Zamora d/b/a 3L Lots and Developers
     LLC/3L Lucksinger Apartments v. American Western Home Insurance Company;* in
     the County Court at Law No. 6, Hidalgo County, Texas

Greetings:

On January 15, 2015, the enclosed documents were received in the office of the
Commissioner of Insurance for service of process. The documents received are being
returned to your office for the reasons indicated below.

1) The mailing address for American Western Home Insurance Company must also be
   noted in the citation. Refer to Texas Administrative Code, Title 28, Chapter 7, Rule
   §7.1414. Enclosed for your reference is a company profile.

2) Pursuant to § 804.201(c) of the Texas Insurance Code, there is a fee of $50.00, each
   time a request for service (including notice/demand/subpoena) is made on the
   Commissioner of Insurance.

Please forward your remittance in the amount of $50.00 payable to the Texas Department
of Insurance, to the address listed above. Also, please include a copy of this letter with
your remittance.

Refer to Chapter 804 of the Texas Insurance Code for service of process information.

Please do not hesitate to call me if you have any questions.

Sincerely,

*Tish Wilhelm*

Tish Wilhelm
General Counsel Division
(512) 463-6109

Enclosures

c: Hidalgo County District Court
   *E-filed*

EXHIBIT C-4

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

1301 MCKINNEY
SUITE 3700
HOUSTON, TEXAS 77010

PHONE: 713.210.7409
FAX: 713.650.9701

www.bakerdonelson.com

April 28, 2015

Arturo Guajardo, Jr.
Hidalgo County Clerk
100 N. Closner
P.O. Box 58
Edinburg, Texas 78539

*Via E-File*

Re: Cause No. CL-15-0095-F; *Amanda Zamora d/b/a 3L Lots and Developers LLC, and 3L Lucksinger Apartments v. American Western Home Insurance Company*; In the County Court at Law No. 6, Hidalgo County, Texas

To The Honorable Clerk of Court:

I hereby designate the following as my vacation period:

August 17 - 21, 2015.

I respectfully request that no settings for the above matter be scheduled during this period or within three days following.

Respectfully,

Valerie Henderson

Valerie Henderson

cc:    Douglas E. Pennebaker
       Pennebaker Law Firm
       200 Concord Plaza, Suite 750
       San Antonio, Texas 78216

       Willie McAllen
       Jose G. Gonzalez
       Law Offices of McAllen-Gonzalez
       2102 W. University Dr.
       Edinburg, Texas 78539

HO VAH 871104 v1
2902013-000102

ALABAMA • FLORIDA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • TEXAS • WASHINGTON. D.C.

EXHIBIT C-5



1301 MCKINNEY STREET
SUITE 3700
HOUSTON, TEXAS 77010

PHONE:   713.650.9700
FAX:      713.650.9701

www.bakerdonelson.com

FACSIMILE TRANSMISSION FORM
**PLEASE DELIVER IMMEDIATELY**
**DATE / TIME:**  APRIL 29, 2015  /  10:01 AM

**DELIVER TO:**                                    **FAX NO.:**              **PHONE NO.:**

Douglas E. Pennebaker                              (210) 562-2880
PENNEBAKER LAW FIRM, PC

Willie McAllen                                     (956) 383-2147
Jose G. Gonzales
LAW OFFICES OF MCALLEN-GONZALEZ

**FROM:**              Valerie Henderson

**PHONE NO.:**         (713) 286-7172

**FAX NO.:**           (713) 650-9701

**RE:**                Cause No. CL-15-0095-F; *Amanda Zamora d/b/a 3L Lots and Developers LLC / 3L Lucksinger Apartments v. American Western Home Insurance Company*; County Court at Law No. 6, Hidalgo County, Texas

                       Cause No. CL-14-1322-H; *Aurora Properties v. Great Lakes Reinsurance (UK) PLC*; In the County Court at Law No. 8 of Hidalgo County, Texas

**NUMBER OF PAGES:**    3  (including fax cover)

**MESSAGE**: Please see attached vacation letter.

*Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.*

*Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.*

HO MCC01 853374 v1
2902013-000102  04/29/2015

## Cearley, Maria

**From:** send@mail.efax.com
**Sent:** Wednesday, April 29, 2015 10:07 AM
**To:** Cearley, Maria
**Subject:** Successful transmission to 12105622880. Re: Vacation Letter



Dear Maria Cearley,

**Re: Vacation Letter**

The 3 page fax you sent through eFax Solutions to 12105622880 was successfully transmitted at 2015-04-29 15:07:04 (GMT).

The length of transmission was 115 seconds.

The receiving machine's fax ID: 210-562-2880.

Best Regards,

If you need additional assistance, please visit our online help center at
https://www.efaxcorporate.com/corp/twa/page/customerSupport. Thank you for using the eFax
Solutions service.

eFax Solutions

---

**Customer Service**
Online Help: https://www.efaxcorporate.com/corp/twa/page/customerSupport
Tel: 1-323-817-3202
Email: corporatesupport@mail.efax.com

---

© 2009 j2 Global Communications, Inc. All rights reserved.
eFax Corporate® is a registered trademark of j2 Global Communications, Inc.

**Cearley, Maria**

| | |
|---|---|
| **From:** | send@mail.efax.com |
| **Sent:** | Wednesday, April 29, 2015 10:08 AM |
| **To:** | Cearley, Maria |
| **Subject:** | Successful transmission to 19563832147. Re: Vacation Letter |



Dear Maria Cearley,

**Re: Vacation Letter**

The 3 page fax you sent through eFax Solutions to 19563832147 was successfully transmitted at 2015-04-29 15:07:35 (GMT).

The length of transmission was 148 seconds.

The receiving machine's fax ID: .

Best Regards,

If you need additional assistance, please visit our online help center at https://www.efaxcorporate.com/corp/twa/page/customerSupport. Thank you for using the eFax Solutions service.

eFax Solutions

---

**Customer Service**
Online Help: https://www.efaxcorporate.com/corp/twa/page/customerSupport
Tel: 1-323-817-3202
Email: corporatesupport@mail.efax.com

---

© 2009 j2 Global Communications, Inc. All rights reserved.
eFax Corporate® is a registered trademark of j2 Global Communications, Inc.

Electronically Submitted
6/16/2015 1:23:48 PM
Hidalgo County Clerks Office

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A | § | IN THE COUNTY COURT |
| 3L LOTS AND DEVELOPERS LLC / | § | |
| 3L LUCKSINGER APARTMENTS | § | |
| v. | § | AT LAW NO. 6 |
| | § | |
| | § | |
| AMERICAN WESTERN | § | |
| HOME INSURANCE COMPANY | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF'S MOTION TO MEDIATE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME, Plaintiff, AMANDA ZAMORA, D/B/A 3L LOTS AND DEVELOPERS

LLC/ 3L LUCKSINGER APARTMENTS, and asks the Court to compel mediation on the parties'

dispute and would respectfully show the Court as follows:

### A. INTRODUCTION

1.      Plaintiff is Plaintiff, AMANDA ZAMORA, D/B/A 3L LOTS AND

DEVELOPERS LLC/ 3L LUCKSINGER APARTMENTS; Defendant is AMERICAN WESTERN

HOME INSURANCE COMPANY.

2.      Plaintiff filed suit against Defendant, in part, because of underpayment of an

insurance claim for covered losses under its policy.

3.      Limited discovery has been completed at this time.

### B. FACTS

4.      There is a reasonable expectation that the disputes in this case may be resolved

through mediation and therefore requests the Court to refer this matter to mediation with GIL

PERALEZ, ALFRED DENHAM or LEO SALZMAN.  Further, so that additional expense is not

1

EXHIBIT C-6

incurred in an attempt to resolve this matter, Plaintiff requests this mediation take place within

sixty 60 days of the Court's Order GRANTING this Motion.

      6.  Plaintiff also requests that the Defendant have an adjuster present, in person, at the

mediation, who has authority to settle this matter in good faith.

## C. <u>PRAYER</u>

      8.   For these reasons, Plaintiffs respectfully request the Court to compel mediation within

sixty 60 days, and that Defendant have an adjuster present at the mediation who has authority to

settle this matter in good faith; and, that this Motion be set as an expedited hearing, and for such

other and further relief to which Plaintiffs may show themselves justly entitled.

      Respectfully submitted,

      PENNEBAKER LAW FIRM
      A Professional Corporation
      200 Concord Plaza, Suite 750
      San Antonio, Texas  78216
      Telephone:   (210) 562-2888
      Telecopier:   (210) 562-2880

By: _____
      DOUGLAS E. PENNEBAKER
      State Bar No. 00788178
      Lead counsel
      ATTORNEY FOR PLAINTIFF

LAW OFFICES OF MCALLEN-GONZALEZ
2102 W. University Dr.
Edinburg, Texas  78539
Telephone:    (956) 383-2143
Telecopier:    (956) 383-2147


By: _____ *for Willie McAllen*
        WILLIE MCALLEN
        State Bar No. 24047468
        JOSE G. GONZALEZ
        State Bar No. 24053234


### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on the following by facsimile on the 16th  day of June, 2015:

Eddy De Los Santos
Valerie Henderson
Baker Donelson Bearman Caldwell & Berkowitz, PC
1301 McKinney, Suite 3700
Houston, TX  77010
713-650-9700
Fax: 713-650-9701
www.bakerdonelson.com



_____
DOUGLAS E. PENNEBAKER

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A | § | IN THE COUNTY COURT |
| 3L LOTS AND DEVELOPERS LLC / | § | |
| 3L LUCKSINGER APARTMENTS | § | |
| v. | § | AT LAW NO. 6 |
| | § | |
| | § | |
| AMERICAN WESTERN | § | |
| HOME INSURANCE COMPANY | § | HIDALGO COUNTY, TEXAS |

## **ORDER TO MEDIATE**

After considering Plaintiff's Motion to Compel Mediation the Court grants the MOTION

AND ORDERS AS FOLLOWS:

1.      The parties shall agree to mediate this matter with **GIL PERALEZ, ALFRED**

**DENHAM, LEO SALZMAN or** _____.

2.      The mediation shall take place within SIXTY (60) days  of the signing and entry of

this Order.

3.      A representative of the parties and their counsel shall <u>attend mediation in good faith,

and remain present until its completion</u>.

4.      All statements made during mediation sessions and all materials prepared for

mediation are confidential.

5.      The mediation shall be confidential, privileged from discovery, and otherwise

conducted in accordance with the Texas Civil Practice and Remedies Code § 154.073.

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

1

EXHIBIT C-7

Mr. Douglas E. Pennebaker                    Mr. Willie McAllen
PENNEBAKER LAW FIRM                   Mr. Joe G. Gonzalez
200 Concord Plaza Dive #750               2102 University Dr.
San Antonio, Texas  78216                    Edinburg, Texas  78539
*Via Fax: 210- 562-2880*                        *Via Fax:  956-383-2147*
doug@pennebakerlaw.com                   rgvhailstorm2012@gmail.com


Eddy De Los Santos
Valerie Henderson
Baker Donelson Bearman Caldwell & Berkowitz, PC
1301 McKinney, Suite 3700
Houston, TX  77010
713-650-9700
Fax: 713-650-9701
www.bakerdonelson.com

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A | § | IN THE COUNTY COURT |
| 3L LOTS AND DEVELOPERS LLC / | § | |
| 3L LUCKSINGER APARTMENTS | § | |
| v. | § | AT LAW NO. 6 |
| | § | |
| | § | |
| AMERICAN WESTERN | § | |
| HOME INSURANCE COMPANY | § | HIDALGO COUNTY, TEXAS |

## ORDER SETTING HEARING ON
## PLAINTIFF'S MOTION TO MEDIATE

Plaintiff's *Motion to Mediate* having been filed with the Court and duly presented to me, the same are hereby set for hearing on the __5__ day of ___August___, 2015 at __8:30__ o'clock _a_.m. in the County Court at Law Number 6, of Hidalgo County, Texas.

SIGNED this __8__ day of ___July___, 2015.

_____ F. F.
JUDGE PRESIDING

| | |
|---|---|
| Mr. Douglas E. Pennebaker | Mr. Willie McAllen |
| PENNEBAKER LAW FIRM | Mr. Joe G. Gonzalez |
| 200 Concord Plaza Dive #750 | 2102 University Dr. |
| San Antonio, Texas  78216 | Edinburg, Texas  78539 |
| *Via Fax: 210- 562-2880* | *Via Fax:  956-383-2147* |
| doug@pennebakerlaw.com | rgvhailstorm2012@gmail.com |

Eddy De Los Santos
Valerie Henderson
Baker Donelson Bearman Caldwell & Berkowitz, PC
1301 McKinney, Suite 3700
Houston, TX  77010
713-650-9700
Fax: 713-650-9701
www.bakerdonelson.com

EXHIBIT C-8

Electronically Submitted
6/16/2015 1:23:48 PM
Hidalgo County Clerks Office

Electronically Submitted
8/24/2015 10:19:37 AM
Hidalgo County Clerks Office

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A 3L LOTS | § | IN THE COUNTY COURT |
| AND DEVELOPERS LLC / 3L | § | |
| LUCKSINGER APARTMENTS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 6 |
| | § | |
| AMERICAN WESTERN HOME | § | |
| INSURANCE COMPANY, | § | |
|     Defendant. | § | HIDALGO COUNTY, TEXAS |

## DEFENDANT'S TRADITIONAL MOTION FOR FINAL SUMMARY JUDGMENT

Defendant American Western Home Insurance Company ("Defendant" or "American Western") files this motion for final traditional summary judgment as to all of Plaintiff Amanda Zamora, D/B/A 3L Lots and Developers LLC / 3L Lucksinger Apartments' ("Plaintiff" or "Zamora") claims.

## I.      INTRODUCTION

1.       The Court should grant American Western's motion for summary judgment as to all of Plaintiff's claims for the following reasons:

- **Zamora's claims for alleged violation of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violation of the DTPA, and negligent misrepresentation are barred by the applicable statute of limitations;**

- **Zamora's claims fail because she is not a named insured, additional insured, or intended third-party beneficiary under the Policy;**

- **3L Lots lacks capacity to sue American Western because 3L Lots forfeited its existence; and**

- **Zamora does not have standing to sue in her individual capacity, and there is no evidence she has standing to sue as a representative of 3L Lots; therefore, all of her claims must be dismissed for lack of subject matter jurisdiction.**

EXHIBIT C-9

## II.    FACTS

2.    On June 30, 2011, American Western issued a commercial property insurance policy, Policy Number ZM1147129J ("the Policy"), to "3L Lots and Developers LLC" and "3L Lucksinger Apartments," both of which are listed as the "named insured" on the Policy declarations page.[1]  The property insured under the Policy is an apartment building located at 1202 Lucksinger, Mission, Texas 78572 (the "Property"), and coverage under the Policy was effective from June 30, 2011 to June 30, 2012.[2]  Amanda Zamora is not listed as a named insured on the Policy declarations page or anywhere else in the Policy.[3]

3.    On April 23, 2012, 3L Lots submitted a Property Loss Notice to American Western stating that the Property had suffered wind and hail damage to the roof and ceiling during a storm that occurred on April 20, 2012.[4]  American Western promptly assigned an adjuster to investigate the claim, and notified  3L Lots' insurance agent on April 24, 2012 that an adjuster had been assigned to the claim.[5]  The adjuster conducted a thorough inspection of the Property on May 10, 2012.[6]  Based on the inspection, American Western sent a letter to the insured on May 21, 2012, in which American Western informed the insured that, because the damage to the Property did not exceed the $5,000 deductible, no payment would be issued for the claim.[7]  American Western then closed its file.[8]

4.    Over two and a half years later, on January 12, 2015, Plaintiff filed suit against American Western alleging that American Western (1) breached the Policy; (2) violated Chapters 541 and 542 of the Texas Insurance Code; (3) violated the Texas Deceptive Trade

---

[1] *See* **Exhibit A-1**: Policy.
[2] *See id.*
[3] *See id.*; *see* **Exhibit A**: Declaration of Michelle Newton.
[4] *See* **Exhibit A-2**: Property Loss Notice.
[5] *See* **Exhibit A-3**: Letter to Amanda Zamora Insurance Agency.
[6] *See* **Exhibit A-4**: Letter to Insured.
[7] *See id.*
[8] *See* **Exhibit A**.

Practices Act ("DTPA"); (4) breached the duty of good faith and fair dealing; (5) committed fraud; and (6) made negligent misrepresentations to Plaintiff.[9]

### III.   STANDARD OF REVIEW

5.       The movant for a traditional summary judgment has the burden to show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[10]  Once the movant establishes its entitlement to the judgment as a matter of law, the non-movant must present evidence showing a genuine issue of fact exists.[11]  The court will take all evidence favorable to the non-movant as true, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in its favor when deciding whether there is a disputed issue of material fact that precludes summary judgment.[12]

### IV.   ARGUMENT & AUTHORITIES

**A.   Plaintiff's claims for alleged violation of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violation of the DTPA, and negligent misrepresentation are all barred by the applicable statute of limitations.**

6.       Plaintiff's claims for alleged violation of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violation of the DTPA, and negligent misrepresentation are all subject to a two-year statute of limitations.[13]  These claims accrued at the latest on May 21, 2012, when American Western sent a denial letter to the insured in which American Western informed the insured that, because damage to the Property did not exceed the $5,000 deductible,

---

[9] *See* Plaintiff's Original Petition (the "Petition").
[10] Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).
[11] *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).
[12] *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Nixon*, 690 S.W.2d at 548-49.
[13] *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (establishing two-year statute of limitations applicable to negligent misrepresentation); *see HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (two-year statute of limitation applies to negligent misrepresentation); *see* Tex. Bus. & Comm. Code § 17.565 (establishing two-year statute of limitations for claims filed under the DTPA); *see* Tex. Ins. Code § 541.162 (establishing two year statute of limitations for unfair method of competition or unfair or deceptive act or practice claims under the Insurance Code); *see Liberty Mut. Fire Ins. Co. v. Richards*, 810 S.W.2d 232, 233 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (applying a two-year statute of limitations to a claim for breach of the duty of good faith and fair dealing).

no payment would be issued for the claim.[14]  Plaintiff did not file this lawsuit until January 12, 2015, over two and a half years later.[15]  Therefore, Plaintiff's claims for alleged violation of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violation of the DTPA, and negligent misrepresentation are barred by the applicable two-year statutes of limitation, and all fail as a matter of law.

**B.    Zamora's claims for breach of contract and her extra-contractual claims for alleged violation of the Texas Insurance Code, the DTPA, and the duty of good faith and fair dealing all fail because she is not a named insured, additional insured, or intended third-party beneficiary under the Policy.**

7.     Zamora is not identified anywhere in the Policy.[16]  She is not a named insured. She is not an additional insured.  And there is no mention of the parties' intent to secure a benefit for her as a third-party beneficiary to the Policy.[17]  Therefore, her claims for breach of contract and her extra-contractual claims for violation of Chapters 541 and 542 of the Texas insurance Code, DTPA, breach of the duty of good faith and fair dealing, negligence and fraud, all fail as a matter of law.

*i.    Zamora's breach of contract claim fails as a matter of law.*

8.     Zamora lacks standing to bring a breach of contract claim against American Western because she is not in privity of contract with American Western.  She is not a named insured, additional insured, or third-party beneficiary under the Policy.[18]

9.     To establish a claim for breach of contract, a plaintiff must show: "(1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the

---

[14] *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (holding that the statute of limitations accrues when the underlying insurance contract claims are finally resolved, i.e. when the insurer denies coverage).
[15] *See* Petition.
[16] *See* **Exhibit A-1**.
[17] *See id.*
[18] *See* **Exhibit A-1**.

defendant's breach of the contract, and (4) damages as a result of the breach."[19]   Privity is established by proving that the defendant was a party to an enforceable contract with the plaintiff.[20]   In the present case, the summary judgment evidence establishes that Zamora is not a party to the Policy.[21]   "Generally, a property-insurance policy is a personal contract between the insured and the insurer."[22]   Here, the only "Named Insureds" listed on the "Common Policy Declarations" page are "3L LOTS AND DEVELOPERS LLC" and "3L LUCKSINGER APARTMENTS."[23]   Zamora is not identified in the Policy or in any endorsement to the Policy as a named insured or an additional insured.[24]

10.   Zamora is also not an intended third-party beneficiary of the Policy.  In Texas, a third party may enforce a contract made between other parties only if the parties to the contract intended to secure some benefit to the third party, and only if the contracting parties entered into the contract directly for the third party's benefit.[25]   If the contract confers only an indirect, incidental benefit to the third party, the third party cannot enforce the contract.[26]   Traditionally, Texas courts have presumed that a party contracts only for its own benefit.[27]   Therefore, **"[t]here is a strong presumption in Texas law _against_ third-party beneficiary agreements," and a court "must look to the terms of the contract to determine whether the contracting parties**

---

[19] *Trahan v. Fire Ins. Exch.*, 179 S.W.3d 669, 674–75 (Tex. App.—Beaumont 2005, no pet.).
[20] *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied) (citing *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App.—Tyler 2006, pet. denied)).
[21] *See* **Exhibit A-1**.
[22] *Debes v. General Star Indemnity Co.*, No. 09–12–00527–CV, 2014 WL 3384679, *3 (Tex. App.—Beaumont July 10, 2014, no pet.) (citing *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 388 (Tex. App.—Dallas 2012, no pet.)).
[23] *See* **Exhibit A-1**.
[24] *Id.*
[25] *Debes*, 2014 WL 3384679 at *3 (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)).
[26] *Id.* (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).
[27] *Id.* (citing *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011); *MCI Telecomms*, 995 S.W.2d at 651).

**expressly demonstrated an intent to depart from that presumption.**"[28]  "In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling."[29]  " A court will not create a [third-party] beneficiary contract by implication."[30] **The intention to contract for or confer a direct benefit to a third party must be clearly and fully spelled out in the agreement itself, or enforcement by the third party must be denied.**[31]  " In other words, the party claiming third-party beneficiary status will succeed or fail according to the terms of the contract."[32]

11.    "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary."[33]  In determining the contracting parties' intent, "[a]ll doubts must be resolved against conferring third-party beneficiary status."[34]  Therefore, "[i]f there is any reasonable doubt as to the contracting parties' intent to confer a direct benefit on the third party by way of the contract, the third-party beneficiary claim must fail."[35]

12.    There is no evidence that Zamora was an intended third-party beneficiary to the Policy.  There is nothing in the express language of the Policy that "clearly and fully spells out

---

[28] *Id.* (citing *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 773 (Tex. App.—Corpus Christi 2003, no pet.); *Tawes*, 340 S.W.3d at 425 ("Traditionally, Texas courts have maintained a presumption against third-party beneficiary agreements."); *Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex. App.—Fort Worth 1996, no writ) (noting that a third party faces a "difficult burden" in establishing a contractual third-party beneficiary claim)) (emphasis added).

[29] *Id.* (citing *Basic Capital*, 348 S.W.3d at 900 (quoting *MCI Telecomms.*, 995 S.W.2d at 651)).

[30] *Id.* (citing *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 775 (Tex. App.—Beaumont 2008, orig. proceeding) (per curiam).

[31] *Id.* (citing *Basic Capital*, 348 S.W.3d at 900 (quoting *MCI Telecomms.*, 995 S.W.2d at 651)).

[32] *Id.* (citing *Marine Creek*, 926 S.W.2d at 795 (quoting *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex. App.—Fort Worth 1992, no writ))).

[33] *Id.* (citing *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App.—Fort Worth 2012, pet. denied) (internal quotes omitted); *Rivera v. S. Green Ltd. P'ship*, 208 S.W.3d 12, 22–23 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)) (emphasis added).

[34] *Id.* (citing *Tawes*, 340 S.W.3d at 425).

[35] *Id.* (citing *Ortega*, 97 S.W.3d at 773).

---

an intent" on behalf of American Western and the named insureds to confer a direct benefit on Zamora.[36] Therefore, her breach of contract claim fails as a matter of law.

      **ii.**    ***Zamora's extra-contractual claims for alleged violation of the Texas Insurance Code, the DTPA, and the duty of the good faith and fair dealing fail as a matter of law.***

     13.    Because Zamora is not a named insured, additional insured, or third-party beneficiary under the Policy, as established above, all of her extra-contractual claims for alleged violation of the Texas Insurance Code, the DTPA, and the duty of good faith and fair dealing fail as a matter of law as well. Courts in Texas have consistently held that "a third-party claimant has no direct cause of action against an insurer for unfair claim settlement practices" under the Texas Insurance Code.[37] Therefore, Zamora's claims under Chapters 541 and 542 of the Texas Insurance Code fail because, as shown above, she is not a named insured, additional insured, or third-party beneficiary under the Policy.[38]

     14.    Additionally, Zamora's extra-contractual claim for breach of the duty of good faith and fair dealing fails as a matter of law. The claim for breach of the duty of good faith and fair dealing "arises from the contractual relationship between the insured and the insurer."[39] "Under Texas law, insurers have long had a duty to deal fairly and in good faith with an insured in processing and paying claims."[40] "The elements require that an insurance contract exist between the plaintiff-insured and the defendant-insurer to create a duty of good faith and fair dealing."[41] "Only the insured has the standing to sue its insurer for the breach of the duty of

---

[36] *Id.* at *5; *see* **Exhibit A-1**.
[37] *Barrios v. Great Am. Assur. Co.*, No. CIV.A. H-10-3511, 2011 WL 3608510, at *4 (S.D. Tex. Aug. 16, 2011) (citing *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 149 (Tex. 1994)).
[38] *Id.*
[39] *See Pak-Petro, Inc. v. Am. W. Home Ins. Co.*, No. 1:12-CV-247, 2013 WL 5356898, at *7 (E.D. Tex. Sept. 9, 2013) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988)).
[40] *Id.* (citing *Aranda*, 748 S.W.2d at 212–13; *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)).
[41] *Id.*

good faith and fair dealing and the insurer's duty in this regard does not extend to third party claimants."[42]   Because Zamora is not a named insured, additional insured, or third-party beneficiary under the Policy, her claim for breach of the duty of good faith and fair dealing fails.

15.   Zamora's claim under the DTPA also fails for these same reasons.   Courts in Texas have repeatedly held that, where there is no direct contractual relationship between the parties, the plaintiff cannot maintain a claim under the DTPA against an insurer.[43]

**C.   3L Lots forfeited its existence; therefore, it lacks capacity to sue American Western.**

16.   Standing is a party's justiciable interest in the suit, and is a requisite component of subject-matter jurisdiction.[44]   Capacity is a party's legal authority to go into court to prosecute or defend a suit.[45]   To bring suit and recover on a cause of action, a plaintiff must have both standing and capacity.[46]   As demonstrated above, Zamora is not an insured under the Policy and lacks standing to bring this action in her own name.   But even if this lawsuit had been brought by the named insured, 3L Lots and Developers LLC, rather than "Amanda Zamora d/b/a 3L Lots and Developers LLC," summary judgment in American Western's favor would still be appropriate because 3L Lots and Developers LLC lacks the capacity to sue.

17.   According to the Texas Secretary of State, 3L Lots and Developers, LLC forfeited its charter to the Secretary of State on August 1, 2014 for violation of the franchise tax provision

---

[42] *Id.* (citing *Tamez v. Certain Underwriters at Lloyd's London*, 999 S.W.2d 12, 21 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)).

[43] *See id.*; *see Barrios v. Great Am. Assur. Co.*, No. CIV.A. H-10-3511, 2011 WL 3608510, at *4 (S.D. Tex. Aug. 16, 2011).

[44] *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247, 249 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Pankhurst v. Weitinger & Tucker*, 850 S.W.2d 726, 729 (Tex. App.—Corpus Christi 1993, writ denied); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443, 445–46 (Tex.1993)).

[45] *Id.* (citing *Davis v. City of Houston*, 869 S.W.2d 493, 494 n. 1 (Tex. App.—Houston [1st Dist.] 1993, writ denied)); Tex. Tax Code §§ 171.251–171.252 (prohibiting corporation that has not paid its franchise taxes from going into Texas state courts to sue or defend except in an action for forfeiture of charter)).

[46] *Id.*

of the Texas Tax Code.[47]  3L Lots and Developers, LLC's existence remains forfeited and has

not been revived as of August 14, 2015.[48]  Because 3L Lots forfeited its charter, it has no right to

conduct business in Texas.[49]  "The Supreme Court of Texas has held that where the Secretary of

State has entered on the record in his office forfeiture of the right of the corporation to do

business in this state, the charter of the corporation has not thereby been canceled nor has the

corporation been dissolved."   However, "the effect of such a forfeiture is to prohibit the

corporation from doing business in the state, and ***to deny it the right to sue*** or defend in any

court of the state except in a suit to forfeit its charter."[50]  Because 3L Lots and Developers LLC

forfeited the right to do business in Texas, it lacks the capacity to sue.[51]

**D.    Zamora does not have standing to sue in her individual capacity, and there is no
       evidence that she has standing to sue as a representative of 3L Lots and Developers
       LLC.**

18.    As the foregoing demonstrates, Zamora does not have standing to sue in her

individual capacity.   Furthermore, there is no evidence that she has standing to sue as a

representative of 3L Lots and Developers LLC.   Therefore, her claims against American Western

should be dismissed in their entirety.

19.    Texas courts have held that "a sole shareholder who refuses to pay franchise taxes

for his corporation, and does not dissolve the corporation, does not become a successor in

interest to the corporation.   Thus, he has no standing to sue for injuries to the corporation."[52]  "A

shareholder may not sue in his own name and for his own benefit on a cause of action belonging

---

[47] *See* **Exhibit B**: Forfeiture of Existence of 3L Lots and Developers, L.L.C.
[48] *See* **Exhibit C**: Certificate of Fact from Texas Secretary of State.
[49] *Timbertech Inc. v. Wallboards, Inc.*, No. 14-98-00422-CV, 1999 WL 649116, at *2 (Tex. App.—Houston [14th
Dist.] Aug. 26, 1999, writ denied) (citing *Regal Constr. Co. v. Hansel*, 596 S.W.2d 150, 153 (Tex.Civ.App.—
Houston [1st Dist.] 1979, writ ref'd n.r.e.)).
[50] *Id.* (citing *Regal Constr. Co.*, 596 S.W.2d 150, 153 (citing *Humble Oil & Refining Co. v. Blankenburg*, 235
S.W.2d 891 (Tex. 1951))) (emphasis added).
[51] *See id.* (holding, because Timbertech forfeited the right to do business in Texas, it also lacked the capacity to sue).
[52] *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247, 250 (Tex. App.—Houston [1st Dist.] 1995), writ
denied).

to a corporation, even if that shareholder is indirectly injured."[53]   This is true even for sole shareholders.[54]   In either case, it is the company that holds its assets, including any causes of action.[55]

20.     When a corporation forfeits its privilege to sue, the title to its assets bifurcates with the legal title to the assets remaining in the corporation and the beneficial title vesting in the shareholders.[56]   As the beneficial owners of the corporation's assets, the shareholders may prosecute and defend actions in state courts.[57]   "This entitlement to prosecute and defend actions in state courts is what is meant by the term 'capacity.'"[58]   However, while the shareholders have the capacity to sue, they do not have standing.[59]   "Capacity to sue devolves upon the shareholders of a corporation when that corporation becomes incapacitated. Standing to sue, however, does not devolve upon the shareholders, and they must sue as representatives of the corporation, which still owns legal title to its cause of action."[60]   For the shareholders to sue as representatives of the corporation, there must be some proof that the corporation expressly gave the shareholders the authority to conduct the corporation's litigations.[61]   Absent proof of representative capacity, the court must assume the shareholders were not suing in such a capacity.[62]

21.     In the present case, Zamora brought suit in her individual capacity.[63]   Under Section I of the Petition, titled "Parties and Rule 190 Discovery Level," Zamora states that

---

[53] *See id.* at 251; *see Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *3 (Tex. App.—Austin May 27, 2010, pet. denied) (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 718–19 (Tex. 1990); *White v. Independence Bank, N.A.*, 794 S.W.2d 895, 897 (Tex. App.—Houston [1st Dist.] 1990, writ denied)).
[54] *Id.*
[55] *Id.*
[56] *See El T. Mexican Restaurants*, 921 S.W.2d at 251; *Regal Constr. Co.*, 596 S.W.2d at 153.
[57] *Id.*
[58] *Id.*
[59] *Mossler*, 2010 WL 2133940 at *3 (emphasis added).
[60] *Id.*
[61] *See White v. Independence Bank, N.A.*, 794 S.W.2d 895, 898 n. 3 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *Kaspar v. Thorne*, 755 S.W.2d 151, 154 (Tex. App.—Dallas 1988, no writ).
[62] *See id.*
[63] *See* Petition, ¶ 1.

"Plaintiff is an individual."[64]  In *El T. Mexican Restaurants, Inc. v. Bacon*, the Court determined that the plaintiff was appearing in his individual capacity, and not as a representative of a corporation, by looking at the same statement in the plaintiff's petition that stated "Plaintiff is an *individual* residing in Harris County, Texas."[65]  Zamora clearly brought this lawsuit in her individual capacity, yet she does not have standing to sue in her individual capacity for injuries that allegedly occurred to the incapacitated 3L Lots and Developers LLC.  Further, there is no evidence that Zamora has authority to act in a representative capacity for 3L Lots and Developers LLC.  Therefore, because Zamora does not have standing to sue in a representative capacity for 3L Lots and Developers LLC, and because she improperly brought this suit in her individual capacity, all of Zamora's claims should be dismissed.

## V.   SUMMARY JUDGMENT EVIDENCE

22.   Defendant's motion for summary judgment depends upon the following evidence, which is attached hereto and incorporated fully into this motion:

- **Exhibit A:** Declaration of Michelle Newton;

    - **Exhibit A-1:** Policy;
    - **Exhibit A-2:** Property Loss Notice;
    - **Exhibit A-3:** Letter to Amanda Zamora Insurance Agency;
    - **Exhibit A-4:** Letter to Insured;

- **Exhibit B:** Forfeiture of Existence of 3L Lots and Developers, L.L.C.;

- **Exhibit C:** Certificate of Fact from Texas Secretary of State.

## VI.   CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant American Western Home Insurance Company respectfully requests that the Court enter judgment that Plaintiff take nothing in its suit, that the Court enter an order dismissing Plaintiff's suit with prejudice,

---

[64] *See id.* (emphasis added).
[65] *See El T. Mexican Restaurants*, 921 S.W.2d at 250 (emphasis in original).

Defendant recovers its costs and attorneys' fees, and for all other relief to which Defendant may be justly entitled.

Respectfully submitted,

By: /s/ Valerie Henderson
       **Eddy De Los Santos**
       Texas Bar No. 24040790
       **Valerie Henderson**
       Texas Bar No. 24078655
       **BAKER, DONELSON, BEARMAN,**
       **CALDWELL & BERKOWITZ. P.C.**
       1301 McKinney Street
       Suite 3700
       Houston, Texas 77010
       (713) 650-9700 - Telephone
       (713) 650-9701 - Facsimile

       *Attorneys for Defendant American Western*
       *Home Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2015, a true and correct copy of the foregoing was served as indicated on the following counsel pursuant to the Texas Rules of Civil Procedure:

Douglas E. Pennebaker
PENNEBAKER LAW FIRM, PC
200 Concord Plaza, Suite 750
San Antonio, Texas 78216
*Via email and CMRRR*

Willie McAllen
Jose G. Gonzalez
LAW OFFICES OF MCALLEN-GONZALEZ
2102 W. University Dr.
Edinburg, Texas 78539
*Via email and CMRRR*

/s/ Valerie Henderson
Valerie Henderson

# EXHIBIT A

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A 3L LOTS | § | IN THE COUNTY COURT |
| AND DEVELOPERS LLC / 3L | § | |
| LUCKSINGER APARTMENTS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 6 |
| | § | |
| AMERICAN WESTERN HOME | § | |
| INSURANCE COMPANY, | § | |
|     Defendant. | § | HIDALGO COUNTY, TEXAS |

<u>**DECLARATION OF MICHELLE R. NEWTON**</u>

      1.     "My name is Michelle R. Newton. I am of sound mind and competent to make this declaration. I have personal knowledge of all the facts stated within this declaration based on my personal knowledge of the facts of this case and my personal review of the books and records of American Western Home Insurance Company ("American Western") pertaining to the American Western Commercial Policy number ZM1147129J (the "Policy"), including the records attached to this declaration, and all statements of fact contained herein are true and correct. I am authorized to make this declaration.

      2.     I am a Claims Examiner employed by E&S Claims Management, Inc. E&S Claims Management, Inc. is a third-party administrator for American Western and maintains control of the documents and records being introduced herewith.

      3.     Attached hereto are business records of American Western. The documents attached hereto as **Exhibits A-1** through **A-4** are true and correct copies of the documents kept by American Western in the regular course of business, and it was the regular course of business of American Western for an employee or representative with knowledge of the act or event recorded to make or keep the records, and the records were made or kept at or near the time of the act or event, or reasonably soon thereafter:

- **Exhibit A-1:** Policy;
- **Exhibit A-2:** Property Loss Notice;
- **Exhibit A-3:** Letter to Amanda Zamora Insurance Agency; and
- **Exhibit A-4:** Letter to Insured.

      4.     The records of American Western reflect the following facts:

      a.     On June 30, 2011, American Western issued the Policy to "3L Lots and Developers LLC" and "3L Lucksinger Apartments." (**Exhibit A-1**). The Policy insured an apartment building located at 1202 Lucksinger, Mission, Texas 78572 (the "Property"), and was effective from June 30, 2011 to June 30, 2012. (**Exhibit A-1**).

   b.     On April 23, 2012, 3L Lots and Developers LLC submitted a Property Loss Notice to American Western stating that the Property had suffered wind and hail damage to the roof and ceiling during a storm that occurred on April 20, 2012. (**Exhibit A-2**).   American Western promptly assigned an adjuster to investigate the claim, and notified 3L Lots and Developers LLC's insurance agent on April 24, 2012 that an adjuster had been assigned to the claim. (**Exhibit A-3**).   The adjuster conducted a thorough inspection of the Property on May 10, 2012. (**Exhibit A-4**).   Based on the inspection, American Western sent a letter to the insured on May 21, 2012 in which American Western informed the insured that, because the damage to the Property did not exceed the $5,000 deductible applicable to the Policy, no payment would be issued for the claim. (**Exhibit A-4**).   American Western then closed its file.

   5.     I declare under penalty of perjury that the foregoing statements are true and correct."

FURTHER DECLARANT SAYETH NOT.

Executed on _____ **August 19** _____, 2015.

_____
                     Michelle R. Newton

# EXHIBIT A-1

Notice #: 56165



**AMERICAN WESTERN HOME**
**INSURANCE COMPANY**
MAIN ADMINISTRATIVE OFFICE
**7000 Midland Boulevard**
**Amelia, Ohio 45102-2607**

**Policy Number:**
ZM1147129J

**Renewal of:**
NEW

## Common Policy Declarations

ITEM 1: Named Insured & Mailing Address
3L LOTS AND DEVELOPERS LLC
3L LUCKSINGER APARTMENTS

1806 PEACE ST
MISSION                      TX      78572

Business Description:

ITEM 2: Policy Period     From:  06/30/2011   To:   06/30/2012        APARTMENT

12.01 A.M. Standard Time at the address of the Named Insured as stated herein

In return for the payment of the Premium, and subject to all of the terms of this Policy, we agree with you to provide the Insurance Coverage as described in this Policy and noted below.

| | **PREMIUMS** |
|---|---|
| **Commercial Property Insurance Coverage** | $   1,827.00 |
| **Commercial Inland Marine Insurance Coverage** | $ |
| **Commercial General Liability Insurance Coverage** | $   750.00 |
| **Commercial Crime Insurance Coverage** | $ |
| **Other Insurance Coverage:** | $ |
| **TRIA 2002 Insurance Coverage** | $ |

| | | |
|---|---|---|
| Policy Premium | $ | 2,577.00 |
| Policy Fee | $ | 200.00 |
| Stamping Fee | $ | 1.67 |
| State Tax | $ | 134.68 |

TOTAL: $_____  2,913.35

FORMS AND ENDORSEMENTS MADE A PART OF THIS POLICY AT TIME OF ISSUE:
See Schedule of Forms and Endorsements (MHI-169 05/06)

**Countersigned:**
**Issued At:**  SAN ANTONIO, TX
**Issue Date:**  07/19/2011      WB/JT

McClelland and Hine, Inc.
PO Box 700930
San Antonio, TX 78270-0930

**Authorized Representative**

Agent: 1283
SANDRA ZAMORA INSURANCE AGENCY
2013 N CONWAY
MISSION                      TX    78572

Notice #: 56165

## IMPORTANT NOTICE

To obtain information or to make a complaint:

You may call _____ NOT REQUIRED _____
toll-free telephone number for information or to make a complaint at:

### NOT REQUIRED

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, Texas 78714-9104
Fax # (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

### PREMIUM OR CLAIM DISPUTES

Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de _____ NO SE REQUIERE _____ para informacion o para someter una queja al:

### NO SE REQUIERE

Puede communicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departamento Seguros de Texas:

P.O. Box 149104
Austin, Texas 78714-9104
Fax # (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

### DISPUTAS SOBRE PRIMAS O RECLAMOS

Si tiene una disputa concerniente a su prima o a un reclamo, debe communicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces communicarse con el departamento Texas Department of Insurance.

### UNA ESTE AVISO A SU POLIZA

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

**MHI-43 (07/07)**

Notice #: 56165

## GUARANTY FUND NONPARTICIPATION NOTICE

**"This Insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus hnes insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code.  Chapter 225, Insurance Code, requires payment of a 4.85 percent tax on gross premium."**

**MHI-29 (03/09)**

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS – Page 1 of 2

Policy No. <u>ZM1147129J</u>                                         Effective Date: 06/30/2011
<u>_____</u> Supplemental Declarations attached              12:01 A.M., Standard Time

**BUSINESS DESCRIPTION***

**DESCRIPTION OF PREMISES**

| Prem# | Bldg# | LOCATION (Address, City, County, State, Zip), PPC, CONSTRUCTION, OCCUPANCY, CSP |
|---|---|---|
| 1 | 1 | 1202 LUCKSINGER                    MISSION            HIDALGO            TX        78572 |
| | | PPC: 4        CONSTRUCTION: BV            OCCUPANCY: APARTMENT        CSP: 0311 |
| | | PPC:        CONSTRUCTION:            OCCUPANCY:            CSP: |
| | | PPC:        CONSTRUCTION:            OCCUPANCY:            CSP: |
| | | PPC:        CONSTRUCTION:            OCCUPANCY:            CSP: |
| | | PPC:        CONSTRUCTION:            OCCUPANCY:            CSP: |
| | | PPC:        CONSTRUCTION:            OCCUPANCY:            CSP: |

**COVERAGES PROVIDED** – Insurance at the Described Premises applies only for Coverages for which a Limit of Insurance is shown.

| Prem # | Bldg # | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSE OF LOSS | COINSURANCE† | RATES | PREMIUM |
|---|---|---|---|---|---|---|---|
| 1 | 1 | BUILDING | $300,000 | SPECIAL | 80% | .609 | $1,827 |

**OPTIONAL COVERAGES**   Applicable only when entries are made in the Schedule below | †If Extra Expense Coverage, Limits on Loss Payment

| | | AGREED VALUE | | | REPLACEMENT COST APPLIES ONLY IF "X" SHOWN BELOW | | |
|---|---|---|---|---|---|---|---|
| Prem # | Bldg # | EXPIRATION DATE | COVERAGE | AMOUNT | BUILDING | PERSONAL PROPERTY | INCLUDING "STOCK" |
| | | | | | | | |

| Prem # | Bldg # | INFLATION GUARD (Percentage) | | ††MONTHLY LIMIT OF INDEMNITY (Fraction) | ‡‡Applies to Business Income Only | ††EXTENDED PERIOD OF INDEMNITY (Days) |
|---|---|---|---|---|---|---|
| | | BLDG | PERSONAL PROPERTY | | ††MAXIMUM PERIOD OF INDEMNITY (X) | |
| | | | | | | |

*Information omitted if shown elsewhere in the policy                    .
**Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**MHI-CF150 (08/09) - Page 1 of 2**

Notice #: 56165

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS – Page 2 of 2

**Policy No.** ZM1147129J

**Effective Date:** 06/30/2011

_____ Supplemental Declarations is attached

12:01 A.M., Standard Time

---

### MORTGAGEE

| Prem# | Bldg# | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|-------|-------|------------------------------------------|

INTERNATIONAL BANK

PO BOX 1700
MCALLEN          TX          78505
LOAN/REF: 41483                                    LOAN/REF:


LOAN/REF:                                          LOAN/REF:

MORTGAGEE REMARKS:

---

### DEDUCTIBLE

☒ $ 1000 _____ **deductible applies to all covered losses except as noted below.**

____ $_____ **deductible applies to Named Storms. Refer to** _____.

☒ $ 5000 _____ **deductible applies to Windstorm/Hurricane/Hail. Refer to** __N/A__ .

____ $_____ **deductible applies to** _____.

____ $_____ **deductible applies to** _____.

**Deductibles apply on the following basis:**   ☒ **per occurrence** _____.
                                        ____ **per location/premises** _____.
                                        ____ **per building** _____.

____ **A Windstorm/Hurricane/Hail Exclusion Endorsement applies to this policy. Refer to** _____ **for details.**

**\*\*DEDUCTIBLE REMARKS:**

---

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in this policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
   **PLEASE REFER TO THE DECLARATIONS PAGE OR TO THE FORMS SCHEDULE.**

---

### PREMIUM

**PREMIUM FOR THIS COVERAGE PART: US$** 1,827.00

---

\*Information omitted if shown elsewhere in the policy.
\*\*Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**MHI-CF150 (08/09) - Page 2 of 2**

Notice #: 56165

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: ZM1147129J                          Effective Date:    06/30/2011      **

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other than Products/Completed Operations) | $ | 1,000,000 |
| Products/Completed Operations Limit | $ | INCLUDED |
| Each Occurrence Limit | $ | 1,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 100,000 Any One Fire |
| Medical Expense Limit | $ | 5,000 Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business*: LLC
Business Description*: APARTMENT

Location of All Premises You Own, Rent, or Occupy:
1    1202 LUCKSINGER                    MISSION          HIDALGO              TX    78572

### PREMIUM:

| Class Code # | Premium | Rate | | Advance Premium | |
|---|---|---|---|---|---|
| Class Code Description | Basis | Pr/CO | All Other | Pr/CO | All Other |
| 60010 APARTMENT BUILDINGS | U  15 | INCL | 48.64 | 0 | $750 MP |

Total Advance Premium $ 750.00

**Premium Basis:**

| | | | |
|---|---|---|---|
| (s) Gross Sales per $1,000 | (p) Payroll per $1,000 | (c) Total Cost per $1,000 | (t) Other |
| (m) Admissions per 1,000 | (e) Each | (g) Gallons per 1,000 | (u) Units per 1 |

### POLICY MAY BE AUDITABLE.

### FORMS AND ENDORSEMENTS (Other than applicable forms & endorsements shown elsewhere in the policy):

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
See Schedule of Forms and Endorsements (MHI-169 05/06)

*Information omitted if shown elsewhere in the policy.
**Inclusion of date optional.
***See Each Occurrence Limit.

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

## SCHEDULE OF FORMS AND ENDORSEMENTS

| FORM NO. | EDITION DATE | FORM/ENDORSEMENT TITLE |
|---|---|---|
| | | Cover Page |
| | | Common Policy Declarations |
| MHI-43 | 07/07 | Complaints Notice |
| MHI-29 | 03/09 | Guaranty Fund Nonparticipation Notice |
| MHI-CF150 | 08/09 | Commercial Property Coverage Part Declarations |
| | | Commercial General Liability Coverage Part Declarations |
| MHI-18 | 11/07 | Amendatory Endorsement - Minimum Earned Premium / Policy Fees Fully Earned |
| AWH-4040PR | 08/09 | Fungus Wet Rot Dry Rot and Bacteria Exclusion |
| MHI-26AW | 04/03 | General Certificate Provisions |
| IL-0017 | 11/98 | Common Policy Conditions |
| IL-0953 | 01/08 | Exclusion of Certified Acts of Terrorism |
| CP-0090 | 07/88 | Commercial Property Conditions |
| CP-0010 | 06/07 | Building  Business Personal Property Coverage Form |
| CP-1030 | 06/07 | Causes of Loss - Special |
| CP-1032 | 08/08 | Water Exclusion Endorsement |
| CP-1033 | 06/95 | Theft Exclusion |
| CP-1056 | 06/07 | Sprinkler Leakage Exclusion |
| IL-0415 | 04/98 | Protective Safeguards |
| MHI-47 | 06/05 | Loss Conditions Endorsement-Modified Vacancy Provisions |
| MHI-48 | 08/09 | Property Endorsement |
| MHI-183 | 09/08 | Exclusion-Prior Damage to Property |
| IL-0021 | 11/85 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| MHI-40 | 06/05 | Commercial General Liability - Additional Exclusions |
| MHI-63 | 06/99 | Premium Audit Condition |
| CG-0001 | 10/93 | Commercial General Liability Coverage Form |
| CG-2144 | 11/85 | Limitation of Coverage to Designated Premises or Project |
| CG-2167 | 12/04 | Fungi or Bacteria Exclusion |
| CG-2173 | 01/08 | Exclusion of Certified Acts of Terrorism |
| PVS-00 | 06/06 | Privacy Notice and Notice of Information Practices |
| | 07/06 | AMIG Policy Jacket |

MHI-169 (05/06)

Notice #: 56165

## AMENDATORY ENDORSEMENT –
### MINIMUM EARNED PREMIUM
### POLICY FEES FULLY EARNED


It is hereby understood and agreed that the minimum earned premium shall be
__25%__ of the annual premium unless the policy is cancelled by the Company for
underwriting reasons in which case the premium shall be pro-rata of the annual
premium.

It is further agreed that all policy fees charged hereunder are fully earned and not
subject to adjustment in the event of policy change or termination.  This applies
whether such policy fees are charged at inception or charged mid-term in
conjunction with an endorsement.


**MHI-18 (11/07)**

Notice #: 56165

# FUNGUS, WET ROT, DRY ROT, AND BACTERIA EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> **CAUSES OF LOSS – BASIC FORM**
> **CAUSES OF LOSS - BROAD FORM**
> **CAUSES OF LOSS – SPECIAL FORM**

**A.**  **Exclusion** titled **"Fungus", Wet Rot, Dry Rot And Bacteria** and **Additional Coverage – Limited Coverage For "Fungus, Wet Rot, Dry Rot and Bacteria** are deleted.

**B.**  The following is added to **Exclusions**:
  We will not pay for loss or damage caused by or resulting from "fungus", wet rot, dry rot, or bacteria.

## GENERAL CERTIFICATE PROVISIONS

This policy is issued by McClelland and Hine, Inc., in accordance with the limited authority granted by American Western Home Insurance Company/GUIC Insurance Company, via their underwriting manager, Bell & Clements Inc.

The insured is requested to read this policy, and if not correct, return it immediately to McClelland and Hine, Inc., for appropriate amendment.

In the event of a claim under this policy, please notify McClelland and Hine, Inc.

This policy is not valid unless countersigned by McClelland and Hine, Inc., a duly authorized representative of the Company, on the declaration page.

McClelland and Hine, Inc., and Bell & Clements, Inc., are not insurers hereunder and neither shall be liable for any claim or loss whatsoever.

This policy shall not be assigned, either in whole or in part without the written consent of McClelland and Hine, Inc. endorsed hereon.

This policy is made and accepted subject to all provisions, conditions and warranties set forth herein and attached or endorsed hereto, all of which are to be considered as incorporated herein.

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:
   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

**B.** The following condition is added and supersedes any provision to the contrary:

   **NONRENEWAL**
   **1.**   We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.
   **2.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

**MHI-26AW   (04/03)**

Notice #: 56165

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

□

Notice #: 56165

POLICY NUMBER:                                          IL 09 53 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

Notice #: 56165

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© ISO Properties, Inc., 2007

**IL 09 53 01 08**       □

Notice #: 56165

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

Notice #: 56165

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987
**CP 00 90 07 88**   □

Notice #: 56165

**COMMERCIAL PROPERTY**
**CP 00 10 06 07**

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.,** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation Of Coverage form:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

## 2. Property Not Covered

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

© ISO Properties, Inc., 2007

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

## 3. Covered Causes Of Loss

See applicable Causes Of Loss Form as shown in the Declarations.

## 4. Additional Coverages

### a. Debris Removal

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) Examples

The following examples assume that there is no Coinsurance penalty.

## EXAMPLE #1

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

## EXAMPLE #2

| | | |
|---|---|---|
| Limit of Insurance: | | $ 90,000 |
| Amount of Deductible: | | $    500 |
| Amount of Loss: | | $ 80,000 |
| Amount of Loss Payable: | | $ 79,500 |
| | | ($80,000 − $500) |
| Debris Removal Expense: | | $ 30,000 |
| Debris Removal Expense Payable | | |
| | Basic Amount: | $ 10,500 |
| | Additional Amount: | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

### b. Preservation Of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

### e. Increased Cost Of Construction

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

  **(a)** You were required to comply with before the loss, even when the building was undamaged; and

  **(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

  **(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  **(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

  **(a)** We will not pay for the Increased Cost of Construction:

    **(i)** Until the property is actually repaired or replaced, at the same or another premises; and

    **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  **(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

  **(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

   **(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

   **(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

   **(a)** This policy expires;

   **(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

   **(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

   **(a)** Temporarily at a location you do not own, lease or operate;

   **(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

   **(c)** At any fair, trade show or exhibition.

Notice #: 56165

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

Notice #: 56165

## D. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

### EXAMPLE #1

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building #1: | $ | 60,000 |
| Limit of Insurance – Building #2: | $ | 80,000 |
| Loss to Building #1: | $ | 60,100 |
| Loss to Building #2: | $ | 90,000 |

The amount of loss to Building #1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building #1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building #1:

$ 60,100
−    250
$ 59,850 Loss Payable – Building #1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building #2. Loss payable for Building #2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

### EXAMPLE #2

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example #1.

| | | |
|---|---|---|
| Loss to Building #1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building #2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building #1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building #2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

## E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Notice #: 56165

**3. Duties In The Event Of Loss Or Damage**

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(8)** Cooperate with us in the investigation or settlement of the claim.

  **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

  **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

    **(1)** Pay the value of lost or damaged property;

    **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

    **(3)** Take all or any part of the property at an agreed or appraised value; or

    **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

    We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

  **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

  **c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

  **d.** We will not pay you more than your financial interest in the Covered Property.

  **e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

  **f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

  **g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

    **(1)** We have reached agreement with you on the amount of loss; or

    **(2)** An appraisal award has been made.

© ISO Properties, Inc., 2007
□

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

  **a. Description Of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

      **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

      **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

        **(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

        **(ii)** Used by the building owner to conduct customary operations.

    **(2)** Buildings under construction or renovation are not considered vacant.

  **b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      **(a)** Vandalism;

      **(b)** Sprinkler leakage, unless you have protected the system against freezing;

      **(c)** Building glass breakage;

      **(d)** Water damage;

      **(e)** Theft; or

      **(f)** Attempted theft.

    **(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

  **a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

  **b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE #1 (UNDERINSURANCE)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**EXAMPLE #2 (ADEQUATE INSURANCE)**

| When: | The value of the property is: | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Co-insurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

    **b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**EXAMPLE #3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location #1: | $ 75,000 |
| | Building at Location #2: | $100,000 |
| | Personal Property at Location #2: | $ 75,000 |
| | | $250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations #1 and #2 is: | $180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location #2: | $ 30,000 |
| | Personal Property at Location #2: | $ 20,000 |
| | | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000

    (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

    **a.** The term mortgageholder includes trustee.

    **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

    **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

    **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

        **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

        **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

    At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

    **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

## EXAMPLE

| If: | | |
|---|---|---|
| The applicable Limit of Insurance is: | $ 100,000 | |
| The annual percentage increase is: | 8% | |
| The number of days since the beginning of the policy year (or last policy change) is: | 146 | |
| The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 | |

### 3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

   **(a)** Of comparable material and quality; and

   **(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Notice #: 56165

**COMMERCIAL PROPERTY**
**CP 10 30 06 07**

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.,** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.,** Exclusions; or

**2.** Limited in Section **C.,** Limitations;

that follow.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

### c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

© ISO Properties, Inc., 2007

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**1.** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

© ISO Properties, Inc., 2007

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

  (a) Electrical current, including arcing;

  (b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

  (c) Pulse of electromagnetic energy; or

  (d) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. (1)** Wear and tear;

  **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

  **(3)** Smog;

  **(4)** Settling, cracking, shrinking or expansion;

  **(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

  **(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

  **(7)** The following causes of loss to personal property:

    **(a)** Dampness or dryness of atmosphere;

    **(b)** Changes in or extremes of temperature; or

    **(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  **(1)** You do your best to maintain heat in the building or structure; or

  **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

  **(1)** Acting alone or in collusion with others; or

  **(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

© ISO Properties, Inc., 2007

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.,** Ordinance Or Law;

**(b)** Paragraph **B.1.c.,** Governmental Action;

**(c)** Paragraph **B.1.d.,** Nuclear Hazard;

**(d)** Paragraph **B.1.e.,** Utility Services; and

**(e)** Paragraph **B.1.f.,** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property.

**LOSS OR DAMAGE TO PRODUCTS**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Notice #: 56165

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $2,500 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

© ISO Properties, Inc., 2007

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.;**

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   **b.** Awnings, gutters and downspouts;

   **c.** Yard fixtures;

   **d.** Outdoor swimming pools;

   **e.** Fences;

   **f.** Piers, wharves and docks;

   **g.** Beach or diving platforms or appurtenances;

   **h.** Retaining walls; and

   **i.** Walks, roadways and other paved surfaces;

   if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

      **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

      **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

   **b.** The personal property which collapses is inside a building; and

   **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Notice #: 56165

**6.** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   **a.** A "specified cause of loss" other than fire or lightning; or

   **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage – Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form.

© ISO Properties, Inc., 2007

Notice #: 56165

a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

b. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

(3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.,** does not increase the Limit of Insurance.

**G. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-made underground cavities.

Notice #: 56165

**b.** Falling objects does not include loss or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

© ISO Properties, Inc., 2007

**CP 10 30 06 07**   ☐

COMMERCIAL PROPERTY
CP 10 32 08 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion in Paragraph **B.** replaces the **Water** Exclusion in this Coverage Part or Policy.

**B. Water**

   **1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

   **2.** Mudslide or mudflow;

   **3.** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

   **4.** Water under the ground surface pressing on, or flowing or seeping through:

      **a.** Foundations, walls, floors or paved surfaces;

      **b.** Basements, whether paved or not; or

      **c.** Doors, windows or other openings; or

   **5.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **5.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

© Insurance Services Office, Inc., 2008

Notice #: 56165

**COMMERCIAL PROPERTY**
**CP 10 33 06 95**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# THEFT EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – SPECIAL FORM

The following is added to the EXCLUSIONS section:

We will not pay for loss or damage caused by or resulting from theft.

But we will pay for:

**1.** Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or

**2.** Building damage caused by the breaking in or exiting of burglars.

And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

POLICY NUMBER: ZM1147129J

**COMMERCIAL PROPERTY**
**CP 10 56 06 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPRINKLER LEAKAGE EXCLUSION

This endorsement modifies insurance provided under the following:

> CAUSES OF LOSS – BASIC FORM
> CAUSES OF LOSS – BROAD FORM
> CAUSES OF LOSS – SPECIAL FORM

### SCHEDULE

| Premises Number | Building Number |
|---|---|
| ALL | ALL |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to the **Exclusions** section and is therefore **not** a Covered Cause of Loss:

**SPRINKLER LEAKAGE**

Sprinkler Leakage, meaning leakage or discharge of any substance from an Automatic Sprinkler System, including collapse of a tank that is part of the system.

But if Sprinkler Leakage results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**B.** Under Exclusion **1.g.,** Water, the last paragraph is replaced by the following:

But if Water, as described in the paragraphs above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**C.** Exclusions **2.b.** and **2.c.** in the Causes Of Loss – Basic Form are replaced by the following:

We will not pay for loss or damage caused by or resulting from:

> **b.** Rupture or bursting of water pipes unless caused by a Covered Cause of Loss.

**c.** Leakage or discharge of water or steam from any part of a system or appliance containing water or steam, unless the leakage or discharge occurs because the system or appliance was damaged by a Covered Cause of Loss. But we will not pay for loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**D.** Under **Additional Coverage – Collapse,** in the Causes Of Loss – Broad Form, leakage from fire extinguishing equipment is deleted from Paragraph **2.a.**

**E.** Exclusion **2.g.,** in the Causes Of Loss – Special Form, is replaced by the following:

We will not pay for loss or damage caused by or resulting from water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment caused by or resulting from freezing, unless:

> **(1)** You do your best to maintain heat in the building or structure; or
>
> **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**F.** Under **Limitations** in the Causes Of Loss – Special Form, Item **4.** is replaced by the following:

    **4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if:

        **a.** The damage is directly caused by freezing; and

        **b.** You do your best to maintain heat in the building or structure, or you drain the equipment and shut off the supply if the heat is not maintained.

    However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**G.** In the Causes Of Loss – Special Form, leakage from fire extinguishing equipment is deleted from the "specified causes of loss".

© ISO Properties, Inc., 2007

Notice #: 56165

POLICY NUMBER: ZM1147129J

**INTERLINE**
**IL 04 15 04 98**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

### SCHEDULE*

| Prem.<br>No. | Bldg.<br>No. | Protective Safeguards<br>Symbols Applicable |
|---|---|---|
| ALL | ALL | P-9 |

**Describe any "P-9":**
WARRANT WORKING SMOKE DETECTORS IN EACH RESIDENTIAL UNIT

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.** The following is added to the:

Commercial Property Conditions
General Conditions in the
    Farm Property – Other Farm
    Provisions Form – Additional Coverages,
    Conditions, Definitions
General Conditions in the Mobile Agricultural
    Machinery and Equipment Coverage Form
General Conditions in the Livestock Coverage
    Form

**PROTECTIVE SAFEGUARDS**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

    **(1)** Sprinklers and discharge nozzles;

    **(2)** Ducts, pipes, valves and fittings;

    **(3)** Tanks, their component parts and supports; and

    **(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

    **(1)** Non-automatic fire protective systems; and

    **(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-9"** The protective system described in the Schedule.

**IL 04 15 04 98**

**Page 1 of 2** ☐

Notice #: 56165

**B.** The following is added to the EXCLUSIONS section of:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
MORTGAGE HOLDERS ERRORS  AND
    OMISSIONS COVERAGE FORM
STANDARD PROPERTY POLICY
CAUSES OF LOSS FORM – FARM
    PROPERTY
MOBILE AGRICULTURAL MACHINERY AND
    EQUIPMENT COVERAGE FORM
LIVESTOCK COVERAGE FORM

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Copyright, Insurance Services Office, Inc.,  1997          **IL 04 15 04 98**   ☐

Notice #: 56165

COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS CONDITIONS

Vacancy is hereby eliminated and replaced with the following:

We will not pay for any loss or damage if the building where loss or damage occurs has been "vacant" or "unoccupied" for more than <u>60</u> (sixty) consecutive days or is "vacant" or "unoccupied" at policy inception, whether intended for occupancy by owner or tenant.

"Vacant" means containing no contents pertaining to operations or activities customary to occupancy of the building.

"Unoccupied" means containing contents pertaining to the occupancy of the building while operations or other customary activities are suspended.

**MHI-47 (06/05)**

Notice #: 56165

COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY ENDORSEMENT

Section A, item #4, paragraph d-Pollutant Cleanup and Removal, of Business and Personal Property Coverage Form-CP0010, is deleted from this policy in its entirety.

**MHI-48 (08/09)**

Notice #: 56165

# EXCLUSION – PRIOR DAMAGE TO PROPERTY

It is understood and agreed that this policy does not provide coverage, whether direct or indirect, for damage to property which occurred:

1)  prior to the policy inception date; or
2)  as a result of Hurricane Ike

**MHI-183 (09/08)**

Notice #: 56165

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

Copyright, Insurance Services Office, Inc.,  1983, 1984

Notice #: 56165

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Notice #: 56165

**COMMERCIAL GENERAL LIABILITY – ADDITIONAL EXCLUSIONS**

## ABSOLUTE POLLUTION EXCLUSION

It is agreed that any exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contamination or pollutants is deleted and replaced by the following:

This Certificate does not apply:

1. To "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
   a. at or from premises owned, rented or occupied by the named Insured;
   b. at or from any site or location used by or for the named Insured or others for the handling, storage, disposal, processing or treatment of waste;
   c. which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the Named Insured or any person or organization for whom the Named Insured may be legally responsible; or
   d. at or from any site or location on which the named Insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured are performing operations:
      (1) if the pollutants are brought on or to the site or location with such operations, or
      (2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
2. To any loss or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

## ABUSE OR MOLESTATION EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for claims, "suits," accusations or charges or any loss, cost or expense for "bodily injury," "personal injury," "advertising injury" or "property damage" arising out of:

1. The actual or threatened abuse or molestation of any persons, or
2. The negligent hiring, employment, placement, training, supervision, investigation, reporting to the proper authorities, or failure to report to the proper authorities, retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (1) above.

Abuse and molestation includes but is not limited to any verbal or nonverbal communications, behavior, or conduct with sexual gratification, discrimination, intimidation, coercion, or other purpose, regardless of whether such action or resulting injury is alleged to be intentionally or negligently caused.

## ASBESTOS EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for "bodily injury," "personal injury," "advertising injury" or "property damage" or any loss, cost or expense arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or
2. The use of asbestos in constructing or manufacturing any good, product or structure; or
3. The removal of asbestos from any good, product or structure; or
4. The manufacture, transportation, storage, service, installation, use, sales, mining, distribution or disposal of asbestos or goods or products containing asbestos.

## ASSAULT OR BATTERY EXCLUSION

Section I. COVERAGES, Coverage A – Bodily Injury and Property Damage Liability, 2. Exclusions, a. Expected or Intended Injury, is replaced by the following:

a. "Bodily injury," "property damage," or "personal injury:"
   (1) Expected or intended from the standpoint of any insured; or
   (2) Arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery.

## ATHLETIC OR SPORTS PARTICIPANTS EXCLUSION

This insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

## CLASSIFICATION NOT SCHEDULED EXCLUSION

This insurance does not apply to and no duty to defend is provided for "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any classification(s) which is (are) not scheduled in the Commercial General Liability Coverage Part Declarations and for which you have not paid a premium.

Notice #: 56165

## COMMERCIAL GENERAL LIABILITY – ADDITIONAL EXCLUSIONS

## COMMUNICABLE DISEASE EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for claims, "suits," accusations or charges or any loss, cost or expense arising out of "bodily injury," "personal injury," "advertising injury" or "property damage" arising out of the:

1. Transmission or a communicable disease by an insured or any employee of an insured; or
2. Failure to perform services which were either intended to or assumed to prevent communicable disease or their transmission to others.

## EMPLOYMENT RELATED PRACTICES EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for claims, "suits," accusations or charges of any loss, cost or expense for "bodily injury," "personal injury" or "property damage" arising out of any:

1. Refusal to employ;
2. Termination of employment;
3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment related practices, policies, acts or omissions; or
4. Consequential "bodily injury," "property damage," "personal injury" as a result of 1 through 3. This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

## LEAD CONTAMINATION EXCLUSION

This endorsement excludes occurrences at the Insured premises which result in:

1. "Bodily injury" arising out of the ingestion, inhalation or absorption of lead in any form;
2. "Property damage" arising from any form of lead;
3. "Personal injury" arising from any form of lead;
4. "Advertising injury" arising from any form of lead;
5. "Medical Payments" arising from any form of lead;
6. Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, removing, cleaning up, monitoring, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

## LIQUOR LIABILITY EXCLUSION

This insurance does not apply to and no duty to defend is provided by us for "bodily injury" or "property damage" for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;
2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
3. Any statute, ordinance or regulation relating to the sales, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

1. Manufacture, sell or distribute alcoholic beverages;
2. Serve or furnish alcoholic beverages for a charge whether or not such activity:
   a. Requires a license; or
   b. Is for the purpose of financial gain or livelihood
3. Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

## NEW ENTITIES EXCLUSION

Part 4, of SECTION II – WHO IS AN INSURED does not apply.

## PUNITIVE, EXEMPLARY, AND STATUTORY MULTIPLE DAMAGES EXCLUSION

This insurance does not apply to a claim of or indemnification for any loss, cost or expense for punitive or exemplary damages which are imposed by a court of law to punish a wrongdoer and/or to deter others from similar conduct. If a "suit" is brought against any insured for a claim falling within the coverages provided in this policy, seeking both compensatory and punitive or exemplary damages, than we will afford a defense to such action. We shall not have any obligation to pay for any cost, interest, supplementary payments, or damages attributable to punitive or exemplary damages.

Further, if State Law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is applied. For example, if a state allows treble damages:

If the basic award is $1,000, the Court may then multiply that amount by three, finalizing the award at $3,000. We will pay (subject to the Limit of Insurance) only the $1,000. You must pay the $2,000 award plus you will reimburse us for your deductible.

## VOLUNTEER WORKERS EXCLUSION

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" to any person loaned to or volunteering services to you arising out of or in the course of work performed on your behalf.

Notice #: 56165

## PREMIUM AUDIT CONDITION

This endorsement modifies insurance under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Paragraph 5. of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV) is replaced by the following:

5.     Premium Audit.

a.     We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.     You must obtain Certificates of Insurance, certifying Commercial General Liability with limits of liability and coverage equal to or greater than that provided by this policy, from all subcontractors prior to commencement of any work performed by them for or in your behalf. If you do not obtain Certificates of Insurance as stipulated then such Subcontractors will be deemed to be uninsured for Commercial General Liability Insurance and their costs to you will be deemed as payroll on audit of your records and you will be charged accordingly as if they were your employees.

c.     Premium shown in this Coverage Part Declarations as advance premium is a minimum and deposit premium. It shall be determined based upon an estimate of exposures for the current policy period. 100% (one hundred percent) of this advance premium shall be payable at policy inception.

d.     At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured.

(1)     We may either ask to audit your records at the location of your premises, or those of your accountant, or ask you to send us copies of your records. We will compute the actual earned premium based upon this audit. This premium is due and payable in full on notice to the first Named Insured.

(2)     If the total earned premium for the policy period is less than the Total Advance Premium, then the advance premium is the minimum premium and is not subject to further adjustment.

e.     The first Named Insured must keep records of the information we need for premium computation and permit us to audit these records or, at our option, send us copies at such times as we may request.

f.     Should you not cooperate with the terms of this condition or fail to pay premiums when due we will cancel the policy for failure to comply with the terms of the policy or non-payment of premium in accordance with A. CANCELLATION condition of the Common Policy Conditions. The premium that you paid at inception will be applied against the total earned premium as of the cancellation date. Any refund will be less than prorata. The Cancellation will be effective even if we have not made or offered a refund.

**MHI-63(06/99)**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **(2)** The "bodily injury" or "property damage" occurs during the policy period.

  **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions.**

This insurance does not apply to:

  **a. Expected or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

   **(2)** That the insured would have in the absence of the contract or agreement.

  **c. Liquor Liability**

  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   **(1)** Causing or contributing to the intoxication of any person;

   **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

  This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

 Copyright, ISO Commercial Risk Services, Inc., 1992 ☐

Notice #: 56165

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Notice #: 56165

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

   **(a)** Less than 26 feet long; and

   **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned by or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Notice #: 56165

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section **III**).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement.**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

    **(1)** On premises you own or rent;

    **(2)** On ways next to premises you own or rent; or

    **(3)** Because of your operations;

    provided that:

    **(1)** The accident takes place in the "coverage territory" and during the policy period;

    **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

    **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    **(1)** First aid administered at the time of an accident;

    **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

  **a.** To any insured.

  **b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

  **c.** To a person injured on that part of premises you own or rent that the person normally occupies.

  **d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

  **e.** To a person injured while taking part in athletics.

  **f.** Included within the "products-completed operations hazard".

  **g.** Excluded under Coverage A.

  **h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit".

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

  **a.** Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

    **(1)** "Bodily injury" or "personal injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by,

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

  **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

  **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

  **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Notice #: 56165

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage C;

**b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage A; and

**b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Notice #: 56165

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(2)** That is Fire insurance for premises rented to you; or

    **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in **a.** above; or

Notice #: 56165

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

Notice #: 56165

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

 **(1)** Power cranes, shovels, loaders, diggers or drills; or

 **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

 **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

 **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

 **(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

 **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

 **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14.a.** "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

 **(1)** Products that are still in your physical possession; or

 **(2)** Work that has not yet been completed or abandoned.

**b.** "Your work" will be deemed completed at the earliest of the following times:

 **(1)** When all of the work called for in your contract has been completed.

 **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

 **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Notice #: 56165

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

 Copyright, ISO Commercial Risk Services, Inc., 1992 CG 00 01 10 93

Notice #: 56165

POLICY NUMBER:  ZM1147129J                                    **COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Premises:** Locations specifically described on the Commercial General Liability
Coverage Part Declarations and/or subsequent endorsements thereto

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

**CG 21 44 11 85**        Copyright, Insurance Services Office, Inc.,  1984, 1992        **Page 1 of 1**      □

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Fungi Or Bacteria**

  **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

  **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

  This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Fungi Or Bacteria**

  **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

  **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

Notice #: 56165

**COMMERCIAL GENERAL LIABILITY**
**CG 21 73 01 08**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

## American Modern Insurance Group

# PRIVACY NOTICE AND NOTICE OF INFORMATION PRACTICES

The companies of the American Modern Insurance Group ("AMIG") respect you and your right to privacy. We value your trust. So, we want you to know our policies and procedures that protect the privacy of your Nonpublic Personal Information (NPI). We also want you to know your rights regarding NPI that we receive about you. Thirdly, we want you to know how we gather NPI about you and how we protect its privacy.

In the course of doing business, we receive NPI related to insurance products and services we provide. These products and services are primarily for personal, family and household purposes. We currently do not share your NPI with any third parties not affiliated with AMIG except as required or permitted by law. We have no intention of doing so without proper authorization from you.

The terms of this Notice apply to individuals who inquire about or obtain insurance from one of the AMIG companies. We will send current policyholders a copy of our most recent Privacy Notice and Notice of Information Practices. We will do so at least annually. We will also send you a Notice if we make changes affecting your rights under our privacy policy. We reserve the right to modify or supplement our privacy policy at any time in accordance with applicable law. This Notice applies to current and former customers of AMIG. This Notice does not in any way affect your insurance coverage. You can find this Notice online on our Web site at www.amig.com.

## I. WHAT KIND OF INFORMATION WE COLLECT ABOUT YOU

We get most of our NPI about you directly from insurance applications and other forms that you or your insurance representative provide to us. Some examples of NPI include your name, address, income level and certain other financial information. Often, the NPI you provide to your insurance representative at the time you apply gives us everything we need to evaluate you or your property for insurance purposes. But, there are times when we may need more NPI or may need to verify NPI that you have provided. In those cases, we may obtain NPI from outside sources. We will do so at our own expense.

It is common for an insurance company or other financial services company to contact independent sources. Such sources verify and supplement NPI given on an application for insurance or other financial services products. There are many such independent companies. These are commonly called "consumer reporting agencies". They are in the business of providing independent NPI to insurance companies. We will treat the NPI we receive about you from independent sources according to the terms of this Notice.

You have the right to contact any of the agencies we have used to prepare a report on you. If you wish, please submit your request in writing to the address shown below. Upon our receipt of your written request, we will provide you with the name and address of any agency used to prepare a report on you. Please note that your request must follow the procedures outlined under Sections **V.** and **VI.** below.

Once you become a customer of ours, our records on you may contain NPI about our experiences and transactions with you. Such NPI may include coverage, premiums and payment history. It may also include any claims you make under your policy. Any NPI that we collect in connection with a claim will be kept in accordance with this Privacy Notice. We will keep NPI collected by a claims representative and any police or fire report. We may, though, give NPI about claims to one or more insurance support organizations or another insurer. We may do so to underwrite a risk properly. We may also do so to prevent or prosecute fraud, or to detect criminal activity. We may also obtain NPI about you from a report prepared by an insurance support organization. The NPI may be kept by the support organization and provided to other persons.

Each AMIG company may disclose NPI about you to an affiliate within AMIG regarding its transactions and experiences with you. Such NPI may include your payment or claims history. We do not currently share other credit-related NPI about you, except as allowed or required by law. If, in the future, we do share other credit NPI about you that is not based on our experiences with you, we will advise you. We will also permit you to opt out of such sharing.

Notice #: 56165

## II.   WHAT WE DO WITH INFORMATION WE COLLECT ABOUT YOU

We will keep NPI we have about you in our insurance policy or other records. We will refer to and use that NPI in order to issue and service insurance policies and other financial products. We will also use it to settle claims. Generally, we will not disclose NPI about you in our records to any organization not affiliated with AMIG without your prior permission. But, we may, as allowed by law, share NPI about you contained in our records with certain persons or organizations that are not affiliated with AMIG such as:

- your insurance representative;

- medical professionals;

- other insurancecompanies,agentsor consumer reporting agencies as NPI is needed in connection with any insurance application, policy or claim involving you;

-  our affiliated companies;

- persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy;

- persons or organizations who need the NPI to perform a business, professional or insurance function for us;

- persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual NPI may be identified in any research study report;

- adjusters, appraisers, auditors, investigators and attorneys;

- persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements; and

- a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

### Health Information

Except as allowed or required by law, we will not use or share any personally identifiable health information about you, other than as follows. We will use such information to underwrite or administer your policy, claim or account, or in a manner as previously disclosed to you by us when we collected it. The above will not apply if we have obtained your written consent to share information.

## III.   RESPONSIBILITIES OF OTHER PARTIES

This Notice applies only to the AMIG companies. It does not necessarily reflect the privacy standards of other financial institutions or independent agents with whom you do business. Their privacy policies and information practices govern how they collect, use and disclose NPI about you. As described above, we may disclose your nonpublic personal financial or health information to third parties. When we do so, we will require them to use such NPI only for its intended purpose in accordance with applicable law.

## IV.   WHO HAS ACCESS TO YOUR INFORMATION IN OUR RECORDS

At present, AMIG uses a system of passwords and other physical, electronic and procedural safeguards to protect your NPI. They are designed to protect against unauthorized access to your NPI. We train our employees about the policies and rights provided under this Notice. We also train them on the importance of protecting customer NPI. Employees who violate our policy in any way are subject to being disciplined. This could include actions up to and including termination of employment. Also, we evaluate our information security practices relevant to changes in technology. We will do so to determine ways to increase the protections outlined above.

PVS00 (06/06)

## V.   HOW YOU CAN REVIEW RECORDED INFORMATION WE HAVE ABOUT YOU

### Access to Information

You have the right to review and receive most of the NPI we collect about you. As permitted or required by law, some legal and medical documents will not be provided. To access your NPI, please submit a notarized request to the address shown in Section VI. We will need your complete name, address, policy number, daytime phone number and a copy of your driver's license or other personal identification. We will respond to your request within thirty (30) days unless state law requires us to respond earlier. We will let you know the nature and substance of the NPI about you in our files. We will tell you with whom we have shared the information in the last two years. We will identify the source of the information if the source is an institutional one.

### Correction of Information

If you believe your NPI is incorrect, please send a notarized request for correction to the address shown in Section VI. We will need your complete name, address, policy number, daytime phone number and a copy of your driver's license or other personal identification. We will respond to your request within thirty (30) days unless state law requires us to respond earlier.

If we agree with you, we will correct the NPI and notify you of the correction. We will notify any person who may have received the incorrect NPI from us in the past two years if you ask us to contact that person. We will also provide the corrected information to any insurance support organization to which we have provided your NPI within the last seven years.

If we disagree with you, we will tell you we are not going to make the correction. We will give you the reason(s) for our refusal. We will also tell you that you may submit a statement to us. Your statement should include the NPI you believe is incorrect. It should also include the reason(s) why you disagree with our decision not to correct the NPI in our files. We will file your statement with the disputed NPI. We will include your

statement any time we disclose the disputed NPI. We will also give the statement to any person designated by you if we have disclosed the disputed NPI to that person in the past two years.

## VI.   HOW TO CONTACT US

Once you have read this, if you have any questions about our privacy policy or the NPI kept in our records about you, please write to us at the address shown below:

AMERICAN MODERN INSURANCE GROUP
 7000 Midland Boulevard
Amelia,Ohio 45102-2607
**Attn: Privacy Compliance Office**

**The American Modern Insurance Group's Privacy Notice and Notice of Information Practices are provided on behalf of the following companies:**

American Modern Insurance Group, Inc.
American Family Home Insurance Company
American Modern Home Insurance Company
American Modern Home Service Company
American Modern Insurance Company of Florida, Inc.
American Modern Life Insurance Company
American Modern Lloyds Insurance Company
American Western Home Insurance Company
American Southern Home Insurance Company
American Modern Select Insurance Company
American Modern Surplus Lines Insurance
Company AMH Insurance Agency of Georgia, Inc.
G.U.I.C. Insurance Company
Lloyds Modern Corporation
Manufactured Homes Acceptance Corporation
Marbury Agency
MHAC Insurance Agency, Inc.
Midwest Enterprises, Inc.
Modern Life Insurance Company of Arizona, Inc.
Modern Services Group, Inc.
Service Sentry Warranty Corporation
Sunbelt General Agency, Inc.
The Atlas Insurance Agency, Inc.
American Modern Financial Services, Inc.
Longhorn Insurance Agency, Inc.
Copper Leaf Research
Southern Pioneer Life Insurance Company
Arkansas Life Insurance Company
Union Life Insurance Company
Ouachita Life Insurance Company
Capital Life & Accident Insurance Company

# INSURANCE POLICY



## AMERICAN WESTERN HOME
## &
## AMERICAN MODERN SELECT
## INSURANCE COMPANIES

### MAIN ADMINISTRATION OFFICE:
7000 Midland Boulevard
Amelia, Ohio 45102-2607
1-800-543-2644

THIS POLICY JACKET WITH THE DECLARATIONS PAGE, COMMON POLICY CONDITIONS, ONE
OR MORE COVERAGE FORM(S), AND APPLICABLE ENDORSEMENTS COMPLETE THIS POLICY.

AMIG POLICY JACKET (Rev. 07/06)

Notice #: 56165

# Service of Suit Clause

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.  Nothing in this Clause constitutes or should be understood to constitute a waiver of the rights of the Company to commence an action in any Court of competent jurisdiction in the United States of America, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States of America or any state in the United States of America.

It is further agreed that service of process in such suit may be made upon the Insurance Commissioner of the appropriate State, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company In any such suit and/or upon the request of the Insured to give written undertaking to the Insured that they will enter a general appearance upon the behalf of the Company in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, the Company heron hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute of his successor or successors in office, as its true and lawful attorney upon who may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to who the said officer is authorized to mail such process or true copy thereof.

IN WITNESS WHEREOF, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duty authorized representative of the company

Secretary

President

AMIG POLICY JACKET (Rev. 07/06)

Notice #: 56165



## MAIN ADMINISTRATION OFFICE
7000 Midland Boulevard
Amelia, Ohio 45102-2607
1-800-543-2644

# EXHIBIT A-2

# ACORD® PROPERTY LOSS NOTICE

DATE 04/23/2012

PRODUCER
SANDRA ZAMORA INSURANCE
2013 N CONWAY AVENUE
MISSION TX 78572
956-585-1984
FX(956)585-8984

DATE OF LOSS AND TIME: 04/20/12 6:30 X

COMPANY AND POLICY NUMBER: AMERICAN WESTERN HOME
POLICY: ZM1147129J
POLICY DATES: 06/30/11 — 06/30/12

**INSURED**
NAME AND ADDRESS OF INSURED:
3L LOTS AND DEVELOPERS LLC
3L LUCKSINGER APARTMENTS
1806 PEACE ST MISSION, TX 78572
RESIDENCE PHONE: (956)607-6090

**CONTACT**
Amanda Zamora
956-607-6090

**LOSS**
LOCATION OF LOSS: 1202 LUCKSINGER    MISISON, TX 78572
KIND OF LOSS: FIRE / THEFT / LIGHTNING / [X] HAIL / FLOOD / [X] WIND / OTHER
DESCRIPTION OF LOSS & DAMAGE: WIND & HAIL DAMAGE TO ROOF CEILING IN STORAGE ROOM IS WET, WATER CAME IN

**POLICY INFORMATION**
MORTGAGEE / 1ST MORTGAGEE: Inter NAtinals Bank

| ITEM | SUBJECT OF INSURANCE | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|
| A | [X] BLDG | $300,000 | | $5,000 | Special Form |

REPORTED BY: AMnda ZAMora
REPORTED TO: Spudon
SIGNATURE OF PRODUCER: SANDRA ZAMORA

ACORD 1 (10/93)    NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE    ©ACORD CORPORATION 1993

# EXHIBIT A-3

Your facsimile job to 1-866-783-579... was completed successfully. Pages: 1 ... 04/24/2012 09:03 web... 1 ... shelleyg@mah.com

McClelland and Hine, Inc.
Home Office
2200 Thousand Oaks #100
P.O. Box 7O0930
San Antonio, Texas 78270-0930
Phone: (210) 366-2500

Date: 04/24/12

To Agent: SANDRA ZAMORA INSURA
          2013 N CONWAY
          MISSION TEXAS

Re:  Named Insured: 3L LOTS AND DEVELOPERS LL
     Policy Number: ZM1147129J
     Claim Number : MDC 34277
     Date of Loss : 04/20/12

We are in receipt of loss notice for the above.  This loss has been assigned to
McAllen — Littleton for investigation.
Phone Number: 1-956-428-0063

Sincerely,

McClelland and Hine, Inc. Home Office Claim Dept.

# EXHIBIT A-4



**The**
**Littleton Group**

May 21, 2012


3L Lots & Developers LLC
3L Lucksinger Apartments
1806 Peace St.
Mission, TX 78572

RE:       Policy            :      ZM1147129J
          Claim Number      :      MDC 34277
          Location of Loss  :      1202 Lucksinger
                                   Mission, TX 78572
          Type of Loss      :      Wind/Hail
          Date of Loss      :      April 20, 2012

Dear 3L Lots & Developers & Management:

As you are aware, we are the insurance adjusters representing American Western Home
Insurance Company, who provides coverage for the property located at 1202 Lucksinger
Mission, TX 78572 under the above-referenced policy number, effective June 30, 2011 to
June 30, 2012.  The reported damages to the property were inspected on May 10, 2012, and
our inspection did confirm damages caused by wind.  We have attached a copy of our
estimate for your review.

Based on our inspection, the damages to the property do not exceed the $5,000.00 deductible
that is applicable to your policy.  As a result, no payment will be issued for this loss.  At this
time American Western Home Insurance Company regrets to inform you they will be unable
to assist you any further with this loss.  Our reference to the above stated item must not be
construed as a waiver of any other policy provisions and/or conditions that may be revealed
in the course of further investigation.  American Western Home Insurance Company does not
waive other provisions, limitations, exclusions or conditions of the involved insurance policy,
but rather specifically reserves them.

If you should possess any information contrary to the contents of this letter, please forward it
to our office for further review.  We sincerely appreciate the opportunity to be of service to
you.   If  you  have  any  additional  information  that  you  wish  American  Western  Home
Insurance Company to consider, then please do not hesitate to contact the undersigned.

**3LLots&DevelopersLLC**
**May 21, 2012**
2

Very truly yours,

THE LITTLETON GROUP-WESTERN DIVISION, INC.


Jimmy Romero
Adjuster

Encl.   Building Estimate

# EXHIBIT B

Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697



Carlos H. Cascos
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

3 L LOTS AND DEVELOPERS, L.L.C.
Filing Number: 800705543

Tax Forfeiture                                                                                    August 01, 2014

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on August 14, 2015.



*C̦wᴜᴄ —*

Carlos H. Cascos
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us*

Phone: (512) 463-5555                      Fax: (512) 463-5709                      Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB                      TID: 10266                                  Document: 623499400003



Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Nandita Berry
Secretary of State

# Forfeiture pursuant to Section 171.309 of the Texas Tax Code
## of
# 3 L LOTS AND DEVELOPERS, L.L.C.

File Number : 800705543                         Certificate / Charter forfeited :   August 01, 2014

The Secretary of State finds that:

1. The Secretary has received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code indicating that there are grounds for the forfeiture of the taxable entity's charter, certificate or registration; and

2. The Comptroller of Public Accounts has determined that the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited.

Therefore, pursuant to Section 171.309 of the Texas Tax Code, the Secretary of State hereby forfeits the charter, certificate or registration of the taxable entity as of the date noted above and records this notice of forfeiture in the permanent files and records of the entity.



*Nandita Berry*

Nandita Berry
Secretary of State

# EXHIBIT C

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Carlos H. Cascos
Secretary of State

# Office of the Secretary of State

## Certificate of Fact

The undersigned, as Secretary of State of Texas, does hereby certify that the document, Certificate of Formation for 3 L LOTS AND DEVELOPERS, L.L.C. (file number 800705543), a Domestic Limited Liability Company (LLC), was filed in this office on September 11, 2006.

It is further certified that the entity status in Texas is forfeited existence. The entity became inactive on August 01, 2014.

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on August 14, 2015.



Carlos H. Cascos
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us·*

| | | |
|---|---|---|
| Phone: (512) 463-5555 | Fax: (512) 463-5709 | Dial: 7-1-1 for Relay Services |
| Prepared by: SOS-WEB | TID: 10264 | Document: 623499400005 |

CAUSE NO. CL-15-0095-F

| | | |
|---|---|---|
| AMANDA ZAMORA, D/B/A 3L LOTS | § | IN THE COUNTY COURT |
| AND DEVELOPERS LLC / 3L | § | |
| LUCKSINGER APARTMENTS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 6 |
| | § | |
| AMERICAN WESTERN HOME | § | |
| INSURANCE COMPANY, | § | |
|     Defendant. | § | HIDALGO COUNTY, TEXAS |

## NOTICE OF WITHDRAWAL OF DEFENDANT'S
## TRADITIONAL MOTION FOR FINAL SUMMARY JUDGMENT

On August 24, 2015, Defendant American Western Home Insurance Company ("Defendant" or "American Western"), filed *Defendant's Traditional Motion for Final Summary Judgment*.

Defendant files this its Notice of Withdrawal of its Traditional Motion for Final Summary Judgment.

Respectfully submitted,

By: */s/ Valerie Henderson*
    **Eddy De Los Santos**
    Texas Bar No. 24040790
    **Valerie Henderson**
    Texas Bar No. 24078655
    **BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ. P.C.**
    1301 McKinney Street
    Suite 3700
    Houston, Texas 77010
    (713) 650-9700 - Telephone
    (713) 650-9701 - Facsimile

    *Attorneys for Defendant American Western*
    *Home Insurance Company*

EXHIBIT C-10

Electronically Submitted
8/25/2015 3:25:02 PM
Hidalgo County Clerks Office

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2015, a true and correct copy of the foregoing was served as indicated on the following counsel pursuant to the Texas Rules of Civil Procedure:

Douglas E. Pennebaker
PENNEBAKER LAW FIRM, PC
200 Concord Plaza, Suite 750
San Antonio, Texas 78216

Willie McAllen
Jose G. Gonzalez
LAW OFFICES OF MCALLEN-        GONZALEZ
2102 W. University Dr.
Edinburg, Texas 78539

*/s/ Valerie Henderson*
Valerie Henderson
